IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION, GREENBELT OFFICE

| | |
|---|---|
| MANNIE GARCIA,<br>                              Plaintiff,<br><br>          v.<br><br>MONTGOMERY COUNTY, MARYLAND,<br>**Serve:**  County Executive Isaiah Leggett<br>Executive Office Building<br>101 Monroe Street, 2nd Floor<br>Rockville, Maryland 20850<br><br>CHIEF OF POLICE THOMAS MANGER<br>Montgomery County Police Department<br>(in his official capacity)<br>2350 Research Blvd.<br>Rockville, Maryland  20850<br><br>OFFICER CHRISTOPHER MALOUF,<br>Officer ID#2024<br>Montgomery County Police Department<br>(in his official and individual capacities)<br>2300 Randolph Road<br>Wheaton, Maryland  20902<br><br>OFFICER KEVIN BAXTER, Officer ID#2467<br>Montgomery County Police Department<br>(in his official and individual capacities)<br>2300 Randolph Road<br>Wheaton, Maryland  20902<br><br>OFFICER MICHAEL GRAVES, Officer ID#2578<br>Montgomery County Police Department<br>(in his official capacity)<br>2300 Randolph Road<br>Wheaton, Maryland 20902<br><br>LIEUTENANT MARK SHEELOR, Officer ID#____<br>Montgomery County Police Department<br>(in his official and individual capacities)<br>2300 Randolph Road<br>Wheaton, Maryland  20902<br>                              Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  No. _____<br><br><br><br><br><br>**COMPLAINT FOR<br>DECLARATORY RULING,<br>INJUNCTIVE RELIEF,<br>ACTUAL DAMAGES,<br>PUNITIVE DAMAGES<br>AND ATTORNEY'S FEES<br>JURY TRIAL DEMANDED** |

## INTRODUCTION

1.      The First Amendment's protections for freedom of speech and of the press give citizens the right to take still or moving photographs of public officials performing their duties in public settings.   This well-established legal principle has long been enshrined in police department policies across the country – including those of Montgomery County – but that fact has not prevented the police from treating photography as a crime in a growing number of high-profile incidents.  Whether this is caused by some latent hostility to the press or from aversion to the embarrassment of appearing on YouTube, police officers increasingly react harshly to the presence of cameras.   Credentialed journalists covering public events, such as Occupy Wall Street, have been subjected to arrest, detention, and physical mistreatment simply for practicing their profession.  Likewise, private citizens, who enjoy the same degree of First Amendment protection as reporters, have been harassed and arrested for taking photographs of police officers in public places.

2.      As a consequence, courts have been forced to remind the police that "a citizen's right to film government officials, including law enforcement officers, in the discharge of their duties in a public space is a basic, vital, and well-established liberty safeguarded by the First Amendment." *Glik v. Cuniffe*, 655 F.3d 78, 85 (1st Cir. 2011).  "Gathering information about government officials in a form that can be readily disseminated to others serves a cardinal First Amendment interest in protecting and promoting 'the free discussion of governmental affairs.'" *Id.* at 82 (quoting *Mills v. Alabama*, 384 U.S. 214, 218 (1966)).

3.      The United States Department of Justice has reinforced this message by filing a "Statement of Interest" in a recent case as part of its responsibility to enforce federal civil rights statutes that prohibit state and local law enforcement agencies from engaging in conduct that deprives persons of their rights under the Constitution and laws of the United States.  It explained

1

that "[t]he right to record police officers while performing duties in a public place, as well as the right to be protected from the warrantless seizure and destruction of those recordings, are not only required by the Constitution," they "are consistent with our fundamental notions of liberty, promote the accountability of our government officers, and instill public confidence in the police officers who serve us daily." Statement of Interest of the United States, *Sharp v. Baltimore City Police Dept.*, Civil No. 1:11-cv-02888-BEL (D. Md., Jan. 10, 2012) at 1 (http://www.justice.gov/crt/about/spl/documents/Sharp_SOI_1-10-12.pdf).

4.     This case involves the unlawful arrest, beating and malicious prosecution of Mannie Garcia, a veteran photojournalist who did nothing more than attempt to photograph Montgomery County Police Officers on a public thoroughfare.   The officers involved consciously and deliberately violated the plaintiff's rights and then fabricated accounts of the arrest for "disorderly conduct" to conceal evidence of their wrongdoing.  Montgomery County compounded the problem by mounting a prosecution that lacked any legitimate basis and by whitewashing an internal affairs investigation of the officers' misconduct.  The Defendants' violations of law caused Mr. Garcia serious physical, emotional, and economic injuries.

5.     Accordingly, this civil rights action seeks redress for the violation of Mr. Garcia's rights under the United States Constitution, federal, and state law.  It challenges Montgomery County's policy, custom and practice of obstructing the First Amendment rights of the press and public to gather and record news and information about police activity in public places.  This case presents a particularly disturbing example of the type of police misconduct directed at photographers in recent years that courts and the Justice Department have condemned.

## PARTIES

6.     Plaintiff Mannie Garcia, a Vietnam-era veteran who served honorably in the U.S. Air Force, resides in Montgomery County, Maryland.   He is an award-winning freelance

photojournalist and independent video producer with a career spanning more than 30 years, during which he covered such historic events as the fall of the Berlin Wall and wars in far-flung corners of the world, including Bosnia, Somalia, and Rwanda. He has been a credentialed member of the U.S. Senate Press Gallery and of the White House press corps for 20 years, and his photos have appeared in many leading national and international publications including NEWSWEEK, TIME, THE NEW YORK TIMES, LE FIGARO, DER SPIEGEL, and USA TODAY. Before the events that led to this case, Mr. Garcia had never been arrested nor had any disputes with law enforcement officers.

7.      Defendant Montgomery County, Maryland is a municipal governmental unit created and authorized under the laws of Maryland. It is authorized by law to maintain a Police Department that acts through its Chief, Defendant Thomas Manger.

8.      Defendant Thomas Manger is and at all times herein was Chief of Police for the Montgomery County Police Department ("MCPD"). Chief Manger is responsible, in whole and/or part, for creating, implementing, promulgating and enforcing the policies, practices, and/or customs complained of, including but not limited to those that prevented Mr. Garcia from engaging in lawfully protected and peaceful journalistic activity. Chief Manger's actions as alleged in this complaint were taken under color of the laws of the State of Maryland and Montgomery County. He is sued in his official capacity.

9.      Defendant Christopher Malouf at all times relevant to this complaint was a duly appointed police officer of the MCPD holding the rank of P03. His actions alleged in this complaint were taken under color of the laws of the State of Maryland and Montgomery County. He is sued in his individual and official capacities.

10.      Defendant Kevin Baxter at all times relevant to this complaint was a duly appointed police officer of the MCPD. His actions alleged in this complaint were taken under

color of the laws of the State of Maryland and Montgomery County. He is sued in his individual and official capacities.

11.     Defendant Michael Graves at all times relevant to this complaint was a duly appointed police officer of the MCPD. His actions alleged in this complaint were taken under color of the laws of the State of Maryland and Montgomery County. He is sued in his official capacity.

12.     Defendant Mark Sheelor at all times relevant to this complaint was a duly appointed police officer of the MCPD, currently holding the rank of Lieutenant, and formerly, at the time of the events set forth herein, held the rank of Sergeant. His actions alleged in this complaint were taken under color of the laws of the State of Maryland and Montgomery County. He is sued in his individual and official capacities.

## JURISDICTION AND VENUE

13.     This action is brought pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 2000aa-6(a), and the First, Fourth, and Fourteenth Amendments to the United States Constitution. This Court has subject matter jurisdiction over all federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), and supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367.

14.     All prerequisites to bringing suit, including those imposed by Maryland Code Ann. § 5-304, if any, have been satisfied.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred in this District and because all defendants reside in this District.

## FACTS

16.     On June 16, 2011, Mr. Garcia, his wife, and a family friend were leaving a restaurant when he witnessed an arrest of two young Hispanic men at the corner of Hickerson

Drive and Georgia Avenue in Wheaton, Maryland.  Mr. Garcia later learned that the Officers involved in the incident included Malouf, Baxter, Graves and two Montgomery County Alcohol and Tobacco Enforcement Officers.

17.     When he saw the arrest, Mr. Garcia became concerned that the officers' actions might be inappropriate and that they might involve excessive force, so, as a journalist, he began to record the incident photographically.

18.     At no time did Mr. Garcia interfere with or impede the police activity.  He initially recorded the incident from a distance of at least thirty feet when Officer Baxter flashed him with a spotlight.  Mr. Garcia moved further away and was photographing the arrest from across the street, a distance of nearly 100 feet, when Officer Malouf approached him.

19.     As Officer Malouf approached, Mr. Garcia clearly and audibly identified himself as a member of the press, and opened his hands to show that he was peaceful and had in his possession nothing but a camera.

20.     Officer Malouf was visibly upset that Mr. Garcia was recording the police action on a public street and shouted, "That's it.  You are under arrest!"  Officer Malouf then placed Mr. Garcia in a choke hold and dragged him across the street to his police cruiser.

21.     Other than identifying himself as a member of the press, Mr. Garcia did not speak to the officers before he was placed under arrest.

22.     Notwithstanding the fact that Mr. Garcia had clearly identified himself as a member of the press and had maintained a safe and respectful distance from the police activity, Officer Malouf subjected him to an unlawful arrest as well as verbal and physical abuse.

23.     Upon his arrest, Mr. Garcia was placed in handcuffs and his camera was taken from him.

24.     Officer Malouf forcibly dragged Mr. Garcia across the street, throwing him to the ground along the way, inflicting significant injuries.   While Mr. Garcia was cuffed, Officer Malouf kicked his right foot out from under him, causing Mr. Garcia to hit his head on the police cruiser while falling to the ground. As this was happening, Officer Malouf laughed and taunted Mr. Garcia, saying such things as "Stand up!  Quit falling down."

25.     Despite this abuse, Mr. Garcia did not resist the officers, nor did he take any action to provoke them.

26.     Mr. Garcia called to his wife, who had been sitting in their car. As she emerged to see what was happening, Mr. Garcia heard an officer say "if that fucking bitch takes one more step I am going to arrest her ass." Mr. Garcia called to his wife to stay back, and it was at that point that Officer Malouf kicked his footing out from under him.

27.     Mr. Garcia's wife approached Officer Baxter on the side of the street to ask what was happening.   Baxter, visibly agitated, said, "He is under arrest and you will be too if you keep coming."

28.     Neither Officer Malouf nor any of the other officers at the scene told Mr. Garcia what he was being charged with, nor did they provide *Miranda* warnings.

29.     Mr. Garcia was placed into a police cruiser in which Office Malouf drove him to the Wheaton/Glenmont Police Station.

30.     Parked outside the station, and while still in the cruiser, Mr. Garcia watched Officer Malouf remove the battery and video card from his camera, and stash the video card in his shirt pocket.

31.     From the Wheaton/Glenmont Station, Mr. Garcia was taken to the Montgomery County Detention Center Central Processing Unit, where he was booked and held in custody for several hours until seen by a court commissioner.

32.     Mr. Garcia was charged with violating Maryland Criminal Code § 10-201, which prohibits, among other things, willfully acting in a disorderly manner that disturbs the public peace.

33.     Well-established case law interpreting and applying Maryland Criminal Code § 10-201 allows prosecution only for conduct and speech that is unprotected by the First Amendment.  In particular, it has been the law for three decades that a verbal protest against an illegal police order – even one that includes profanity – does not violate Maryland Criminal Code § 10-201 and cannot be punished constitutionally.  Likewise, the law is clear that members of the public must actually be disturbed before the police have probable cause to make an arrest.  Thus, even the facts as set forth in Officer Malouf's police report made clear that there was no probable cause to arrest Mr. Garcia for disorderly conduct, and no legitimate basis for prosecuting him.

34.     In any event, Officer Malouf's report of the incident was a fabrication.  At no time did Mr. Garcia shout or behave in a disorderly manner, much less use profanity.  Eyewitness accounts confirmed that there was no disorderly conduct or disturbance of the peace, apart from the illegal police action.

35.     After booking on the disorderly conduct charge, Mr. Garcia was released by the court commissioner on his personal recognizance.  At that time, most of Mr. Garcia's property was returned to him, including his camera.  However, his camera's video card that Officer Malouf had pocketed never was returned, and remains missing to this day.

36.     Evidently on the theory that the best defense is a good offense, Montgomery County prosecuted Mr. Garcia in an effort to forestall an inevitable civil rights claim based on the incident.  Thus, Montgomery County proceeded to trial on the disorderly conduct charge despite the fact it possessed evidence that that there was no probable cause to arrest Mr. Garcia and no legitimate claim he had been disorderly in any way.

37.     Following a trial on December 16, 2011, Judge William Simmons of the District
Court of Montgomery County ruled from the bench that Mr. Garcia was not guilty of violating
Maryland Criminal Code § 10-201.

38.     Defendants' illegal conduct toward Mr. Garcia resulted from Montgomery
County's policy or custom of indifference to misconduct by MCPD officers. The officers'
callous disregard for Mr. Garcia's clearly established rights illustrates a lack of training and
supervision requiring the police to follow the law and established departmental policies. This
deficiency is further underscored by the Department's utter failure to properly investigate Mr.
Garcia's Internal Affairs complaint regarding his mistreatment.

39.     The policy the Defendants should have followed was directly on point. The
MCPD policy on Police/Media Relations, FC No. 1141, dated December 29, 2000, provides, in
relevant part:

> ***It is the policy of the department to establish and maintain cooperative
> working relationships with members of the news media. In fact, to the
> extent possible, members of the media should be treated as invited guests
> at incident scenes rather than viewed as a hindrance. In most cases,
> their reporting of our involvement at newsworthy events will portray the
> work of our officers and employees in a positive light, which will help to
> enhance our image and reputation within the community.*** * * * *

and

> ***On the scene of a newsworthy incident, members of the media should
> generally be allowed closer access to the scene than the public. Under
> no circumstances should the media be held back from an area where the
> general public has access.*** In public places, and places where the press
> may otherwise lawfully be, no police officer shall take any action to
> prevent or interfere with the news media in photographing or televising an
> event, a suspect, an accused person, or any other person or thing except
> that the presence of camera technicians and crews shall not be allowed to
> interfere with the police mission at hand. * * * *

The policy was not followed in this case even though Mr. Garcia clearly identified himself as a
journalist prior to his arrest. Far from being treated as an "invited guest," as the policy requires,

the Defendant officers treated Mr. Garcia as a trespasser on a public street and illegally abused him.

40.    Mr. Garcia's brutal mistreatment was promptly brought to the attention of the MCPD's Internal Affairs Division, which did nothing to correct the abuse or to discipline the officers involved.  Shortly after his arrest Mr. Garcia filed a complaint and met with Division officers.  He followed up with Internal Affairs after charges against him were dismissed.

41.    The Internal Affairs Division conducted an investigation, but its efforts were perfunctory and marred by incompetence.  Certain witnesses were contacted and interviews were recorded, including interviews with Mr. Garcia and his wife.  However, the principal investigator, then-Sergeant – now-Lieutenant – Mark Sheelor of Internal Affairs, claims to have "forgotten" to record any interviews with the officers who were under investigation, or even to take any notes.

42.    The investigation also was compromised by a conflict of interest.  The MCPD's Internal Affairs investigation was ongoing during Mr. Garcia's trial and ultimate acquittal on disorderly conduct charges.  Yet during the criminal trial, then-Sergeant Sheelor conferred with and assisted the officers he was purporting to investigate.

43.    The Internal Affairs Division sat on its investigation for nearly five months after Mr. Garcia was acquitted.  Then, on April 12, 2012, Captain Christina Faass, Director of the Internal Affairs Division, informed Mr. Garcia by letter that "it has been determined [ ] there were no administrative violations."

44.    Captain Faass' letter claimed "all pertinent information was examined closely," and that "after careful review, I concur with this finding" of no administrative violations.  However, this statement cannot withstand scrutiny as Sergeant Sheelor neglected to record or create a record of his interviews with the officers under investigation.

9

45.     Rather than undertaking proper investigation and disciplining the culpable parties, MCPD's actions set the stage for further violations of Mr. Garcia's rights.   After he was acquitted, some of the arresting officers have been seen cruising Mr. Garcia's neighborhood and parking in front of his residence.   These efforts to intimidate, which began after Mr. Garcia's arrest and Internal Affairs complaint, continued for a considerable period after his complaint and the initial filing of a civil suit.

46.     These failings were exacerbated by the fact that the MCPD, and in particular Defendant Malouf, have never returned the video card seized from Mr. Garcia's camera, which would have documented the events of June 16, 2011, and corroborated Mr. Garcia's description of the events.

47.     At the time of Mr. Garcia's unlawful arrest, the official policies that the MCPD actually followed (as opposed to those written but ignored) did not affirmatively prohibit its officers from preventing individuals or members of the media from recording police activity in public locations.

48.     At all times relevant to this complaint, Montgomery County has had a policy, custom and practice of failing to adequately train its officers on the clearly established First Amendment right of the press and public to record police activity in public locations.

49.     At all times relevant to this complaint, Montgomery County has had a policy, custom and practice of failing to supervise and discipline officers who unlawfully obstruct and/or prevent members of the media and the public from recording police activity conducted in public view, despite its awareness that these violations happen.

50.     Repeated failure to supervise and discipline shows Montgomery County's deliberate indifference to the First Amendment rights of the public and press to record police conduct in public.

51.     The constitutional violations Mr. Garcia suffered at the hands of the MCPD and its Officers were caused by (a) Montgomery County's unconstitutional practices and policy; (b) a custom and practice among MCPD officers of obstructing and/or preventing members of the media from filming police activity conducted in public, and being emboldened by lack of punishment to do so; (c) Montgomery County's failure to adequately train its officers about the First Amendment right of the press and public to record police activity from public locations; and (d) Montgomery County's failure to supervise and discipline its officers to keep them from improperly and unlawfully obstructing and/or preventing individuals from recording police activity in public locations.

52.     The Officers, and especially Officers Malouf and Baxter, callously disregarded Mr. Garcia's rights – and their own sworn obligation to uphold the law – and thus knowingly deprived Mr. Garcia of his First Amendment rights as a journalist, as well as his rights to due process and to be free from unreasonable search and seizure.

53.     As a direct result of the illegal arrest and prosecution, Mr. Garcia's White House press pass was not renewed for a four-month period between September and December 2011. This prevented Mr. Garcia from being able to function as a member of the White House Press corps, of which he had been a member for two decades.  This cut off a significant source of Mr. Garcia's income as a freelance journalist and infringed his First Amendment rights.

54.     Officer Malouf's seizure of the video card from Mr. Garcia's camera, and its ensuing "disappearance" while in MCPD custody, was undertaken maliciously without due process, and constitutes the willful and knowing destruction of evidence relevant to Mr. Garcia's criminal case, and to this civil rights suit.

55.     Officer Malouf's physical mistreatment of Mr. Garcia during his arrest also was malicious,   and   caused   serious   injuries   to   Mr.   Garcia's   neck,   shoulder,   and   back.

11

Notwithstanding the injuries inflicted, the Officers failed to provide Mr. Garcia necessary medical attention at the time of his false arrest.

56.     These injuries caused Mr. Garcia to be unable to work for an extended period of time and required medical care and extensive physical rehabilitation.  Mr. Garcia incurred medical and related expenses as a result of his injuries.

57.     As a result of the physical injuries inflicted by the Defendants, and due to the emotional stress from the incident, Mr. Garcia was upset and had trouble sleeping.

58.     Mr. Garcia also was forced to endure the humiliation of being physically abused in the presence of his wife, and has suffered damage to his professional reputation because of the false charges he faced.

59.     Mr. Garcia had to incur considerable expense in defending against the baseless charges resulting from his unlawful arrest and malicious prosecution.

## COUNT I
**Section 1983 Claim for Violation of Plaintiff's First and Fourteenth Amendment Rights**
(ALL DEFENDANTS)

60.     Mr. Garcia repeats and realleges the allegations in Paragraphs 1 through 59 as if fully set forth herein.

61.     Observing and recording police activity in public is fully protected by the free speech and free press clauses of the First Amendment to the United States Constitution, as applied to the State of Maryland under the Fourteenth Amendment.

62.     By arresting and detaining Mr. Garcia for recording police activity in public, Officers Malouf, Baxter and Graves, and the MCPD, violated Mr. Garcia's clearly established First Amendment rights.

63.     The confiscation of and failure to return the video card from Mr. Garcia's camera also violated Mr. Garcia's clearly established First Amendment rights.

64.     The Officers and the MCPD violated a clearly established constitutional right of which all MCPD police officers knew, or of which reasonable police officers should have known, rendering them liable to Mr. Garcia under 42 U.S.C. § 1983.

65.     The Officers acted with reckless and callous indifference to Mr. Garcia's First Amendment rights.

66.     The denial of constitutional rights is irreparable injury per se, and Mr. Garcia is entitled to declaratory and injunctive relief.

67.     As a direct and proximate result of the actions of the Officers and MCPD, Mr. Garcia suffered physical, psychological, and professional injuries.

68.     As a direct and proximate result of all of the violations of Mr. Garcia's First Amendment rights, he suffered damages, including:

    a.      Damage to his personal and professional reputation;

    b.      Loss of earnings and earning capacity;

    c.      Physical pain and suffering including medical treatment and expenses;

    d.      Psychological and emotional injury, past and future;

    e.      Degradation, humiliation, mental anguish, suffering and embarrassment; and

    f.      Costs of defense against his criminal charges and other expenses associated therewith.

### COUNT II
**Section 1983 Claim for First Amendment Retaliation**
(ALL DEFENDANTS)

69.     Mr. Garcia repeats and realleges the allegations in Paragraphs 1 through 68 as if fully set forth herein.

70.     Mr. Garcia's First Amendment rights to pursue an internal affairs investigation and to pursue a lawsuit for a violation of those rights were further violated by the arresting officers and other members of the MCPD repeatedly cruising his neighborhood and parking in front of his residence in an effort to threaten and intimidate Mr. Garcia.

71.     Mr. Garcia intends to continue his career as a professional photojournalist photographically recording newsworthy police activity from public locations, but fears further obstruction, harassment and detention by Montgomery County police officers, which prevents him from doing his job effectively, and makes it more difficult for him to gather news for dissemination to the public.

## COUNT III
### Section 1983 Claim for Violation of Plaintiff's Fourth and Fourteenth Amendment Rights
(ALL DEFENDANTS)

72.     Mr. Garcia repeats and realleges the allegations in Paragraphs 1 through 71 as if fully set forth herein.

73.     Under the Fourth Amendment to the United States Constitution, as applied to the State of Maryland under the Fourteenth Amendment, Mr. Garcia has a right to be free from unreasonable searches and seizures.

74.     Officers Malouf, Baxter and Graves and the MCPD violated Mr. Garcia's clearly established Fourth Amendment right to be free from unreasonable seizures by arresting and detaining Mr. Garcia, and by seizing his camera and video card, without probable cause to believe Mr. Garcia was engaged in any criminal activity.

75.     The conduct of Officers Malouf, Baxter and Graves and of the MCPD violated a clearly established constitutional right of which all MCPD police officers knew, or of which reasonable police officers should have known, rendering them liable to Mr. Garcia under 42 U.S.C. § 1983.

76.     The Officers acted with reckless and callous indifference to Mr. Garcia's First Amendment rights.

77.     The denial of constitutional rights is irreparable injury per se, and Mr. Garcia is entitled to declaratory and injunctive relief.

78.     As a direct and proximate result of the actions of the Officers and MCPD, Mr. Garcia suffered physical, psychological, and professional injuries.

79.     As a direct and proximate result of all of the violations of Mr. Garcia's Fourth Amendment rights, he suffered damages, including:

     a.      Damage to his personal and professional reputation;

     b.      Loss of earnings and earning capacity;

     c.      Physical pain and suffering including medical treatment and expenses;

     d.      Psychological and emotional injury, past and future;

     e.      Degradation, humiliation, mental anguish, suffering and embarrassment; and

     f.      Costs of defense against his criminal charges and other expenses associated therewith.

## COUNT IV
### Section 1983 *Monell* Claim
(DEFENDANT MONTGOMERY COUNTY)

80.     Mr. Garcia repeats and realleges the allegations in Paragraphs 1 through 79 as if fully set forth herein.

81.     In arresting Mr. Garcia for filming police activity in public, Officers Malouf, Baxter and Graves violated Mr. Garcia's clearly established rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

82.     At all times relevant to this complaint, Officers Malouf, Baxter and Graves were acting under color of the laws of the State of Maryland and Montgomery County.

83.     At the time of Mr. Garcia's unlawful arrest, the MCPD's "official" policy required MCPD officers to cooperate with members of the news media, to treat them as "invited guests" at incident scenes, and to generally give them closer access to the scene than the public, and under no circumstances were they to hold members of the media back from an area where the general public has access, or take any action to prevent or interfere with photographing an incident or a suspect.

84.     Nonetheless, the Officers interfered with and prevented Mr. Garcia's activities as a journalist by arresting him, physically battering him, and by confiscating his camera and video card.

85.     At all times relevant to this complaint, notwithstanding its written policies on the subject, Montgomery County had a custom and practice of allowing MCPD officers to obstruct and/or prevent media members from recording police activity in public locations, in violation of the First Amendment, as evidenced by the actions of Officers Malouf, Baxter and Graves, and the ensuing malicious prosecution of Mr. Garcia, and as manifested by the inadequate internal affairs investigation that resulted in no record of any interviews of the involved officers or any punishment of consequences of them, which effectively sanctioned and endorsed the treatment of Mr. Garcia.

86.     Montgomery County failed to adequately train its officers in its so-called "Police/Media Relations" policy, or with respect to the First Amendment right of the public and the press to record public scenes of police activity, displaying deliberate indifference to its citizens' constitutional rights.

87.     Montgomery County failed to supervise and discipline its officers for unlawfully interfering with the First Amendment right of the public and press to record public scenes of police activity, displaying deliberate indifference to its citizens' constitutional rights.

88.     Montgomery County also failed to supervise and discipline its officers, and has effectively endorsed their actions, insofar as the MCPD's policy and oversight allows and enables the arresting and other MCPD officers to cruise Mr. Garcia's street and home unnecessarily, as a means of intimidating him and his wife.

89.     These unconstitutional policies, customs and practices of Montgomery County were the moving force behind the violation of Mr. Garcia's constitutional rights by the Officers and the MCPD.

90.     As a direct and proximate result of Montgomery County's unconstitutional policies, customs and practices, Mr. Garcia suffered damages, including:

    a.     Damage to his personal and professional reputation;

    b.     Loss of earnings and earning capacity;

    c.     Physical pain and suffering including medical treatment and expenses;

    d.     Psychological and emotional injury, past and future;

    e.     Degradation, humiliation, mental anguish, suffering and embarrassment; and

    f.     Costs of defense against his criminal charges and other expenses associated therewith.

## COUNT V
### Section 2000aa Claim - Privacy Protection Act of 1980
(ALL DEFENDANTS)

91.     Mr. Garcia repeats and realleges the allegations in Paragraphs 1 through 90 as if fully set forth herein.

92.     The seizure of Mr. Garcia's camera and video card by Officers Malouf and Baxter and other MCPD officers constituted a search and/or seizure of work product materials from Mr. Garcia, who the officers were aware was a photojournalist.

93.     This seizure of Mr. Garcia's camera and video card by Officers Malouf and Baxter and other MCPD officers, and the permanent deprivation of the video card, violated the Privacy Protection Act of 1980, 42 U.S.C. § 2000aa.

94.     The Officers and other members of the MCPD who had access to Mr. Garcia's video card, acted with reckless and callous indifference to Mr. Garcia's federally protected rights.

95.     By reason of these seizures of his camera and video card, Mr. Garcia suffered actual damages, including the loss of licensing fees from his inability to license time-sensitive footage to news organizations, and the value of the video card itself, and of the images other than the arrest described herein, that were on the video card.

## COUNT VI
### False Arrest and False Imprisonment
(ALL DEFENDANTS)

96.     Mr. Garcia repeats and realleges the allegations in Paragraphs 1 through 95 as if fully set forth herein.

97.     Officers Malouf, Baxter and Graves observed Mr. Garcia video-recording the officers effectuating an arrest.

98.     The Officers, who had no rational reason to believe Mr. Garcia was committing any crime, approached Mr. Garcia, handcuffed him, and placed him under arrest.

99.     Garcia's arrest was made without a warrant or legal justification.

100.    The fact that Mr. Garcia was video-recording police actions did not constitute the probable cause needed to make a warrantless arrest, or provide legal justification for the arrest.

101.    The Officers intended to confine Mr. Garcia and deprive him of his liberty when they arrested and placed him in police custody without probable cause.

102.    These actions were flagrant, malicious, willful, wanton and reckless, and displayed a high degree of moral culpability.

103.    The Officers' conduct was committed within the scope of their employment by Montgomery County, and their actions were approved, consented to, and ratified by superior officers of the MCPD acting within the scope of their employment.

104.    As a direct and proximate result of the foregoing, Mr. Garcia suffered damages, including:

  a. Damage to his personal and professional reputation;

  b. Loss of earnings and earning capacity;

  c. Physical pain and suffering including medical treatment and expenses;

  d. Psychological and emotional injury, past and future;

  e. Degradation, humiliation, mental anguish, suffering and embarrassment; and

  f. Costs of defense against his criminal charges and other expenses associated therewith.

### COUNT VII
**Malicious Prosecution**
(ALL DEFENDANTS)

105.    Mr. Garcia repeats and realleges the allegations in Paragraphs 1 through 104 as if fully set forth herein.

106.    Mr. Garcia's arrest and seizure without probable cause led to his prosecution for disorderly conduct without probable cause.

107.    Acting jointly, the Officers, on or about June 16, 2011, swore out an application for a statement of charges for the arrest of Mr. Garcia for allegedly violating Maryland Code Criminal § 10-201 Disorderly Conduct, and stated that Mr. Garcia "did willfully act in a disorderly manner to the disturbance of the public peace."

108.   Officer Malouf swore out a warrant for that charge before a Commissioner of the District Court of Maryland for Montgomery County, and in doing so, with knowledge the charges were false, acted with malice.

109.   Other Officers and/or members of the MCPD, each instituted and/or cooperated to ensure the prosecution went forward.

110.   The Officers appeared before the criminal court at that time and falsely, maliciously, and without probable cause testified Mr. Garcia committed the crime of disorderly conduct.

111.   The prosecution was malicious insofar as it was based on Mr. Garcia's exercise of a clearly protected First Amendment right.

112.   The prosecution of Mr. Garcia was terminated by the not guilty verdict rendered by Montgomery County District Court Judge William Simmons.

113.   The actions of the Officers and their cooperating MCPD officers, were flagrant, willful, wanton and reckless, and displayed a high degree of moral culpability.

114.   The conduct of the Officers and their cooperating MCPD officers, was committed within the scope of their employment by Montgomery County, and their actions were approved, consented to, and ratified by superior officers of the MCPD.

115.   As a direct and proximate result of the foregoing, Mr. Garcia suffered damages, including:

    a.   Damage to his personal and professional reputation;

    b.   Loss of earnings and earning capacity;

    c.   Psychological and emotional injury, past and future;

    d.   Degradation, humiliation, mental anguish, suffering and embarrassment; and

e.    Costs of defense against his criminal charges and other expenses associated therewith.

## COUNT VIII
### Battery
(DEFENDANT MALOUF)

116.    Mr. Garcia repeats and realleges the allegations in Paragraphs 1 through 115 as if fully set forth herein.

117.    Officer Malouf, without probable cause, announced that Mr. Garcia was under arrest, then placed a "choke hold" on him to drag him across the street, and threw him to the ground, before placing him in handcuffs.

118.    Officer Malouf kicked Mr. Garcia's foot out from under him while Mr. Garcia was handcuffed, causing him to hit his head on a police cruiser while falling to the ground.

119.    Other than identifying himself as a member of the press, Mr. Garcia had not spoken to the officers until he was placed under arrest, nor did he resist Officer Malouf or take any action to provoke the Officer Malouf or his colleagues.

120.    Officer Malouf's conduct constituted an intentional, harmful, and offensive touching of Mr. Garcia by Officer Malouf, and was undertaken deliberately and with actual or implied malice.

121.    Officer Malouf's actions were flagrant, willful, wanton and reckless, and displayed a high degree of moral culpability.

122.    Officer Malouf's conduct was committed within the scope of his employment by Montgomery County, and his actions were approved, consented to, and ratified by superior officers of the MCPD acting within the scope of his employment.

123.    As a direct and proximate result of the foregoing, Mr. Garcia suffered damages, including:

a.  Loss of earnings and earning capacity;

c.  Physical pain and suffering including medical treatment and expenses;

c.  Psychological and emotional injury, past and future; and

d.  Degradation, humiliation, mental anguish, suffering and embarrassment.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Mannie Garcia requests relief as follows:

(a)  A declaratory judgment that Mr. Garcia's arrest for video-recording police

activity in a public location and the ongoing menacing of Mr. Garcia and his wife

violated his clearly established constitutional rights under the First, Fourth, and

Fourteenth Amendments to the United States Constitution;

(b)  A declaratory judgment that the confiscation of Mr. Garcia's camera and video

card, and the permanent deprivation of the video card, violated his clearly estab-

lished constitutional rights under the First, Fourth, and Fourteenth Amendments to

the United States Constitution and the Privacy Protection Act, 42 U.S.C.

§ 2000aa;

(c)  An award of compensatory damages against defendants jointly and severally, in

an amount to be determined by a jury at trial, for damages Mr. Garcia suffered in

the form of diminished personal and professional reputation; lost earnings and

earning capacity; physical pain and suffering, including medical treatment and

expenses therefor; psychological and emotional injury; degradation, humiliation,

mental anguish, suffering and embarrassment; and the costs of successfully

defending against criminal charges and other associated expenses;

(d)  Pursuant to 42 U.S.C. § 2000aa-(6)(a) and (f), an award against the defendants

jointly and severally of actual damages, in an amount to be determined by a jury

at trial, as suffered by Mr. Garcia as result of the unlawful seizure of his camera and video card;

(e)   Punitive damages in an amount to be determined by a jury at trial;

(f)   Injunctive relief (i) barring Montgomery County from arresting, detaining, obstructing or otherwise interfering with journalists and members of the public who are engaged in recording police activity in public places; and (ii) directing Montgomery County to develop and implement, with the Court's oversight, a comprehensive and effective policy to protect the First Amendment rights of the public and press to observe and record police activity in public, including appropriate training and procedures to test the effectiveness of that policy on the ground and to discipline appropriately those who breach it;

(g)   Pursuant to 42 U.S.C. §§ 1988 and 2000aa-6(f), an award of the costs and expenses of prosecuting this action, including reasonable attorney's fees; and

(h)   Such other relief that this Court may deem just, proper, and appropriate.

Respectfully submitted,

Robert Corn-Revere *pro hac vice pending*
Ronald G. London
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Ste. 800
Washington, DC  20006
Ph: 202-973-4200
bobcornrevere@dwt.com

## JURY TRIAL DEMAND

Plaintiff hereby requests a trial by jury on all paragraphs and counts.