# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

MANNIE GARCIA,            )
                                 )
      Plaintiff,             )
                    v.       )      Civil No. 8:12-cv-03592-JFM
                                 )
MONTGOMERY COUNTY,       )
MARYLAND, *et al.*,          )
                                 )
      Defendants.        )
_____)

## STATEMENT OF INTEREST OF THE UNITED STATES

       The United States addressed the central questions raised in this case – whether individuals have a First Amendment right to record police officers in the public discharge of their duties, and whether officers violate individuals' Fourth and Fourteenth Amendment rights when they seize such recordings without a warrant or due process – in a Statement of Interest filed in *Sharp v. Baltimore City Police Dept., et al.*, No. 1:11-cv-02888 (D. Md.), attached here as Exhibit A.[1]  Here, as there, the United States urges the Court to answer both of those questions in the affirmative.

       This case raises questions that the United States did not address directly in *Sharp*, the answers to which are critical to ensuring that the constitutional rights at issue in that case are upheld.  First, the United States urges the Court to find that both the First and Fourth Amendments protect an individual who peacefully photographs police activity on a public street, if officers arrest the individual and seize the camera of that individual for that activity.  Second, the United States is concerned that discretionary charges, such as disorderly conduct, loitering, disturbing the peace, and resisting arrest, are all too easily used to curtail expressive conduct or retaliate against individuals for exercising their First Amendment

---

[1] Statement of Interest of the United States, *Sharp v. Baltimore City Police Dept., et al.*, No. 1:11-cv-02888 (D. Md. Jan. 10, 2012), ECF No. 24.

rights.  The United States believes that courts should view such charges skeptically to ensure that individuals' First Amendment rights are protected.  Core First Amendment conduct, such as recording a police officer performing duties on a public street, cannot be the sole basis for such charges.  Third, the First Amendment right to record police officers performing public duties extends to both the public and members of the media, and the Court should not make a distinction between the public's and the media's rights to record here.  The derogation of these rights erodes public confidence in our police departments, decreases the accountability of our governmental officers, and conflicts with the liberties that the Constitution was designed to uphold.

The United States is charged with enforcing three federal civil rights statutes that prohibit state and local law enforcement agencies from engaging in conduct that deprives persons of their rights under the Constitution and laws of the United States.  One of the provisions that the United States enforces is the police misconduct provision of the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141, which authorizes the Attorney General to file lawsuits seeking court orders to reform police departments engaging in a pattern or practice of violating individuals' federal rights.  The United States also enforces the anti-discrimination provisions of the Omnibus Crime Control and Safe Streets Act of 1968 and Title VI of the Civil Rights Act of 1964.  Together, these two provisions prohibit discrimination on the basis of race, color, sex, or national origin by police departments receiving federal funds.  Because of these enforcement responsibilities, the United States has a strong interest in ensuring that individuals' constitutional rights are protected when they observe and document police carrying out their duties in a public setting.  Accordingly, the United States files this Statement of Interest pursuant to 28 U.S.C. § 517.

## FACTUAL AND PROCEDURAL BACKGROUND

According to the Complaint, on June 6, 2011, Mr. Garcia observed Montgomery County Police Department ("MCPD") officers arresting two men and became concerned that the actions of the officers were inappropriate and might involve excessive force.[2]  Compl. at 4-5, ECF No. 1.  He was on a public street when he observed the arrest.  *Id.*  As a journalist, Mr. Garcia took out his camera and began photographing the incident, initially from at least 30 feet away, and then from nearly 100 feet away after an officer flashed him with a spotlight.  *Id.* at 5.  He did not interfere with the police activity.  *Id.*  Other than clearly and audibly identifying himself as a member of the press, Mr. Garcia did not speak to the officers.  *Id.*

One of the officers was visibly upset that Mr. Garcia was recording and shouted that Mr. Garcia was under arrest.  *Id.*  The officer placed Mr. Garcia in a choke hold and dragged him to the police cruiser.  *Id.*  The officer placed Mr. Garcia in handcuffs, seized his camera, and threw Mr. Garcia to the ground, injuring him.  *Id.* at 5-6.  Mr. Garcia did not resist his arrest.  *Id.* at 6.  While in the police car, Mr. Garcia observed the officer remove the battery and video card from his camera.  *Id.*  Mr. Garcia was charged with disorderly conduct.  *Id.* at 7.  Although his possessions were returned to him when he was released, his video card was never returned.  *Id.*  Following a bench trial in December 2011, Mr. Garcia was acquitted of the disorderly conduct charge.  *Id.* at 8.

On December 7, 2012, Mr. Garcia filed a Complaint against Montgomery County, the Chief of MCPD, an MCPD Lieutenant, and three MCPD officers alleging violations of state law and rights protected by the First and Fourth Amendments to the Constitution.  On February 1, 2013, the official

---

[2] The United States assumes the facts presented in the Plaintiff's Complaint are true for the purposes of this Statement of Interest.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

capacity defendants ("Defendants") filed a Motion to Dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure.

## ARGUMENT

The First, Fourth, and Fourteenth Amendments protect Mr. Garcia from the actions taken by MCPD officers in response to Mr. Garcia's recording of their actions, at least on the facts alleged in the Complaint.  As the United States argued in *Sharp*, recording police officers in the public discharge of their duties is protected First Amendment activity, and officers violate individuals' Fourth and Fourteenth Amendment rights when they seize such recordings without a warrant or due process, except in exigent circumstances not present here.

Because recording police officers in the public discharge of their duties is protected speech, when a person is arrested for recording police officers in a public place, both the First and Fourth Amendments are implicated.  Arrests involving such activity should receive the highest level of scrutiny, particularly if the charges involved are highly discretionary, such as disorderly conduct or loitering. And the protections afforded by the First and Fourth Amendments in this context extend not only to members of the press, but also to the general public.  Because Defendants' Motion to Dismiss does not adequately recognize these constitutional protections, the Motion to Dismiss should be denied.[3]

## I.      The First Amendment Protects Photographing Police Activity That Occurs in Public

It is now settled law that the First Amendment protects individuals who photograph or otherwise record officers engaging in police activity in a public place.  Here, Mr. Garcia alleges that he was

---

[3] The Defendants make numerous arguments in their Motion to Dismiss, many of which do not implicate the United States' interests.  In this Statement of Interest, the United States addresses only those arguments that pertain to its enforcement responsibilities under the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141, the Omnibus Crime Control and Safe Streets Act of 1968, and Title VI of the Civil Rights Act of 1964.

peacefully photographing what he perceived to be police officers using excessive force on a public

street.  If true, and we must assume that it is for the purposes of a motion to dismiss, this conduct is

unquestionably protected by the First Amendment.  Both the location of Mr. Garcia's photography, a

public street, and the content of his photography, speech alleging government misconduct, lie at the

center of the First Amendment.  By forcibly arresting Mr. Garcia and seizing his camera, Defendants

stopped Mr. Garcia from photographing a matter of public interest and prevented him from distributing

those photographs to the public.  Yet, Defendants argue that the First Amendment does not protect

individuals from such police action and the only "real alleged Constitutional violation" lies under the

Fourth Amendment.[4]  Defendants further allege that the officer's "alleged seizure of the memory card is

not a First Amendment violation."  *Id.*  These arguments underestimate the breadth of the First

Amendment's protections.

## A.    The First Amendment Is Implicated When a Person Is Arrested for Recording Public Police Activity

Contrary to Defendants' assertions, the First Amendment is implicated when police arrest and

seize the camera of a person recording police activity in a public place.  As alleged in the Complaint,

Mr. Garcia recorded officers in a public place.  He photographed officers engaged in their duties on a

public street, "the archetype of a traditional public forum."  *Frisby v. Schultz*, 487 U.S. 474, 480 (1988).

Public streets "have immemorially been held in trust for the use of the public, and, time out of mind,

have been used for purposes of assembly, communicating thoughts between citizens, and discussing

public questions."  *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983) (citation

omitted); *accord Warren v. Fairfax Cnty.*, 196 F.3d 186, 191 (4th Cir. 1999) ("[A] court can generally

---

[4] *See* Defendants' Amended Motion to Dismiss/Partially Dismiss Counts I, II, III, IV, V, VI and VII of Plaintiff's Complaint and For Other Relief (hereinafter "Def.'s Mot. Dismiss"), ECF No. 11 at 21.

treat a street, sidewalk, or park as a traditional public forum without making a 'particularized inquiry.'"").

Accordingly, "members of the public retain strong free speech rights when they venture into public

streets and parks," and "government entities are strictly limited in their ability to regulate private speech

in such traditional public fora." [5] *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 469 (2009)

(citation omitted).

      The First Amendment is implicated by Mr. Garcia's arrest not only because of where Mr. Garcia

was recording, but also because of the nature of the speech he was engaged in.  The type of speech at

issue here – alleged government misconduct – "has traditionally been recognized as lying at the core of

the First Amendment." *Butterworth v. Smith*, 494 U.S. 624, 632 (1990); *Gentile v. State Bar of Nev.*,

501 U.S. 1030, 1034 (1991) ("There is no question that speech critical of the exercise of the State's

power lies at the very center of the First Amendment.").  The protection offered by the First Amendment

is not diminished when that speech is communicated through a camera lens or recording device.  *See*

*Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 595 (7th Cr. 2012) ("Audio and audiovisual

recording are media of expression . . . included within the free speech and free press guaranty of the

First and Fourteenth Amendments.") (citation omitted); *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011)

(recognizing First Amendment right to "videotape police carrying out their duties."); *Smith v. Cumming*,

212 F.3d 1332, 1333 (11th Cir. 2000) (recognizing a First Amendment right to record police conduct);

*Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995) (same).  While the right to record police

activity is generally subject to reasonable time, manner, and place restraints, *see, e.g., Kelly v. Borough*

---

[5] This statement does not address First Amendment rights in non-public and limited public forums. *See*
*Am. Civil Liberties Union v. Mote*, 423 F.3d 438, 443 (4th Cir. 2005) ("[A] non-public forum is one that
has not traditionally been open to the public, where opening it to expressive conduct would somehow
interfere with the objective use and purpose to which the property has been dedicated.") (citation
omitted); *id.* (A limited public forum "is one that is not traditionally public, but the government has
purposefully opened to the public, or some segment of the public, for expressive activity.").

*of Carlisle*, 622 F.3d 248, 262 (3d Cir. 2010), the conduct that Mr. Garcia engaged in – "peaceful recording of an arrest in a public space that does not interfere with the police officers' performance of their duties," is conduct "not reasonably subject to limitation." *Glik*, 655 F.3d at 84.

Accordingly, Defendants' position that the officers' arrest of Mr. Garcia and seizure of his camera only implicates the Fourth Amendment is untenable.  The reach of the First Amendment's protection extends beyond the right to gather information critical of public officials – it also prohibits government officials from "punish[ing] the dissemination of information relating to alleged governmental misconduct." *Gentile*, 501 *U.S.* at 1034-35 (Kennedy, J.).  When police officers seize materials in order to suppress the distribution of information critical of their actions, "the seizure clearly contravene[s] the most elemental tenets of First Amendment law."  *Rossignol v. Voorhaar*, 316 F.3d 516, 521 (4th Cir. 2003) (deputies violated First Amendment by suppressing distribution of newspaper critical of Sheriff's department).   For decades, the Supreme Court has recognized that government action intended to prevent the dissemination of information critical of public officials, including police officers, constitutes an invalid prior restraint on the exercise of First Amendment rights.  *See, e.g.*, *Near v. Minnesota*, 283 U.S. 697 (1931) (finding that statute prohibiting the publication of articles critical of law enforcement officers was an unlawful prior restraint on First Amendment rights); *Rossignol*, 316 F.3d at 522 (By "intentionally suppress[ing] the dissemination of plaintiffs' political ideas on the basis of their viewpoint . . . before the critical commentary ever reached the eyes of readers," Defendants' "conduct met the classic definition of a prior restraint.").  That MCPD officers seized a camera and video card and not a publication does not diminish the significance of the First Amendment violation. "Seizure of [a] camera and film is at least as effective a prior restraint—if not more so—as . . . an injunction against publication." *Channel 10, Inc. v. Gunnarson*, 337 F. Supp. 634, 637 (D. Minn. 1972);

*see also Robinson v. Fetterman*, 378 F. Supp. 2d 534, 541 (E.D. Pa. 2005) ("[T]o the extent that the troopers were restraining Robinson from making any future videotapes and from publicizing or publishing what he had filmed, the defendants' conduct clearly amounted to an unlawful prior restraint upon his protected speech.").  For these reasons, Mr. Garcia's claims under the First Amendment should not be dismissed.

**B.     Mr. Garcia May Bring Claims Under Both the First and Fourth Amendments**

To the extent that Defendants argue that Mr. Garcia must choose between two applicable constitutional provisions, this position is inaccurate.  The Supreme Court "has never held that one specific constitutional clause gives way to another equally specific clause when their domains overlap." *Presley v. City of Charlottesville*, 464 F.3d 480, 485 (4th Cir. 2006); *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 49 (1993) ("We have rejected the view that the applicability of one constitutional amendment pre-empts the guarantees of another.").  Where a "wrong[] affect[s] more than a single right,"  courts are not charged with "identifying . . . the claim's 'dominant' character," but instead "must examine each constitutional provision in turn."  *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 70 (1992).  Because the facts alleged in Mr. Garcia's Complaint involve potential violations of both the First and Fourth Amendments, he may bring claims under both, and he need not choose between the protections afforded by them.

**II.     Discretionary Charges May Not Be Used To Chill Protected Speech Activity**

Because recording public police activity is protected by the First Amendment, courts have viewed and should view discretionary charges brought against individuals engaged in protected speech with considerable skepticism.  Several cases that have arisen recently regarding the recording of public police activity have involved discretionary charges such as disorderly conduct, loitering, disturbing the

peace, and resisting arrest, being brought against the person engaged in the recording.  *See, e.g., Glik*,

655 F.3d at 80 ("[T]he Boston Municipal Court disposed of the remaining two charges for disturbance

of the peace and violation of the wiretap statute.  With regard to the former, the court noted that the fact

that the 'officers were unhappy they were being recorded during an arrest . . . does not make a lawful

exercise of a First Amendment right a crime.'"); *Datz v. Milton*, No. 2:12-cv-01770 (E.D.N.Y.) (Plaintiff

was charged with obstructing government administration); *Montgomery v. City of Philadelphia*, No.

2:2013-cv-00256 (E.D. Pa.) (Plaintiff was charged with disorderly conduct); *see also* Justin Fenton, *In

Federal Hill, Citizens Allowed to Record Police – But Then There's Loitering*, The Baltimore Sun, Feb.

11, 2012 (officer instructing a citizen-recorder that he would face loitering charges if he failed to move

away from the scene of an arrest).  Use of such charges against individuals recording public police

activity chills protected First Amendment speech.

      Here, the Complaint alleges that Mr. Garcia was arrested for disorderly conduct solely because

he photographed what he believed to be officers engaging in excessive force.  If true, this arrest violates

both the First and Fourth Amendments.  Courts have routinely rejected officers' attempts to criminalize

protected speech through the use of charges that rely heavily on the discretion of the arresting officer on

both First and Fourth Amendment grounds.  *See Norwell v. City of Cincinnati*, 414 U.S. 14, 16 (1973)

(reversing disorderly conduct conviction where petitioner "nonprovocatively voic[ed] his objection to

what he obviously felt was a highly questionable detention by a police officer"); *Swartz v. Insogna*, 704

F.3d 105, 110-11 (2d Cir. 2013) (no probable cause for disorderly conduct arrest where plaintiff's

statements and gesture critical of the police were protected speech); *Wilson v. Kittoe*, 337 F.3d 392, 401

(4th Cir. 2003) ("While it may be inconvenient to a police officer for a neighbor to stand nearby and

watch from his driveway as the officer works, inconvenience cannot, taken alone, justify an arrest under

the Obstruction Statute."); *Payne v. Pauley*, 337 F.3d 767, 777 (7th Cir. 2003) (finding that "arguing

with a police officer, even if done loudly, or with profane or offensive language, will not in and of itself

constitute disorderly conduct");  *Johnson v. Campbell*, 332 F.3d 199, 213 (3d Cir. 2003) (disorderly

conduct arrest not supported by probable cause where plaintiff's "words [to officer] were unpleasant,

insulting, and possibly unwise" but were protected by the First Amendment); *Gainor v. Rogers*, 973

F.2d 1379, 1387-88 (8th Cir. 1992) (disorderly conduct arrest not supported by probable cause where

plaintiff was "merely exercising his First Amendment rights" when he expressed a religious message

and challenged police officers' actions); *see also Cox v. City of Charleston, SC*, 416 F.3d 281, 286 (4th

Cir. 2005) (finding disorderedly conduct statute violated First Amendment where individuals'

"expression does nothing to disturb the peace, block the sidewalk, or interfere with traffic," yet "the

Ordinance renders it criminal").

These decisions are based, in part, on the premise that "[p]olice officers must be more thick

skinned than the ordinary citizen and must exercise restraint in dealing with the public" and "must not

conceive that every threatening or insulting word, gesture, or motion amounts to disorderly conduct."

*Payne v. Pauley*, 337 F.3d at 777 (citation omitted).  *See also City of Houston, Tex. v. Hill*, 482 U.S. 451,

462 (1987) (citing *Lewis v. City of New Orleans*, 415 U.S. 130, 135 (1974) (Powell, J., concurring) ("[A]

properly trained officer may reasonably be expected to 'exercise a higher degree of restraint' than the

average citizen.")).  Indeed, police officers have a duty to ensure that the First Amendment is upheld and

protected speech is not curtailed.

To be sure, individuals may not use the guise of engaging in protected First Amendment speech

in an effort to interfere with police activity.  *See Colten v. Commonwealth of Kentucky*, 407 U.S. 104

(1972) (individual's speech not protected by the First Amendment where individual persistently tried to

engage an officer in conversation while the officer was issuing a summons to a third party on a

congested roadside and refused to depart the scene after at least eight requests from officers); *King v.*

*Ambs*, 519 F.3d 607 (6th Cir. 2008) (individual was not engaged in protected speech when he repeatedly

instructed a witness being questioned by a police officer not to respond to questions). But there are no

facts alleged in the Complaint that suggest that Mr. Garcia interfered with the MCPD officers during the

course of their arrest of the other individuals. He merely recorded their activity from a considerable

distance, and backed even further away when he thought the officers may be bothered by his presence.

In doing so, Mr. Garcia's actions were entirely consistent with the guidelines the United States provided

to Baltimore City Police Department in *Sharp*. *See* Letter from Jonathan M. Smith to Mark H. Grimes

and Mary E. Borja ("BPD Letter") at 5-7 (May 14, 2012) (describing how officers should instruct

individuals to a less-intrusive place where they can continue recording) (attached here as Exhibit B).

There are no facts alleged in the Complaint that suggest that Mr. Garcia was arrested for anything other

than recording the MCPD officers making an arrest, which is protected under both the First and Fourth

Amendments.

### III.  Members of the Public and the Media Are Both Entitled to Protection Under the First Amendment

The First Amendment protections afforded members of the public and press when recording

public police activity are coextensive. As the Supreme Court established more than thirty years ago,

"the press does not have a monopoly on either the First Amendment or the ability to enlighten." *First*

*Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 782 (1978). Although Mr. Garcia alleges facts here that

show that he is a member of the press, this makes no difference to the analysis under the First

Amendment. *See* BPD Letter at 10-11.

In his Complaint, Mr. Garcia alludes to his status as a photojournalist and credentialed member of the news media.  Compl. at 5.  He alleges that MCPD's policy on Police/Media Relations should have governed how MCPD handled the incident, and thus the officers on the scene should have treated Mr. Garcia "as 'invited guest,' as the policy requires."  Compl. at 8.  While Mr. Garcia's status as a journalist and the existence of MCPD's media relations policy may be applicable to Mr. Garcia's claim that Montgomery County has a custom or practice of preventing members of the media from recording police activity and fails to train MCPD officers on its media policy, it is not relevant to the constitutional analysis.  As the First Circuit stated in upholding a private individual's right to record the police, "[t]he First Amendment right to gather news is . . . not one that inures solely to the benefit of the news media; rather, the public's right of access to information is coextensive with that of the press."  *Glik*, 655 F.3d at 83 (citing *Houchins v. KQED, Inc.*, 438 U.S. 11, 16 (1978) (Stewart, J., concurring)).  "[T]he news-gathering protections of the First Amendment cannot turn on professional credentials or status."  *Id.* at 84; *see also Alvarez*, 679 F.3d at 597-98 (noting that the Supreme Court "declined to fashion a special journalists' privilege" in *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972) and holding that audio recordings of police officers by private individuals are entitled to First Amendment protections).

Courts have long held that recordings made by private citizens of police conduct or other items of public interest are entitled to First Amendment protection.  *See, e.g.*, *Glik*, 655 F.3d at 84-85 (finding First Amendment right to record "clearly established"); *Smith*, 212 F.3d at 1333; *Fordyce*, 55 F.3d at 439; *Blackston v. Alabama*, 30 F.3d 117, 120-21 (11th Cir. 1994); *Lambert v. Polk Cnty.*, 723 F. Supp. 128, 133 (S.D. Iowa 1989).  Similarly, the Supreme Court has established that journalists are not entitled to greater First Amendment protections than private individuals.  *See, e.g.*, *Nixon v. Warner Comm., Inc.*, 435 U.S. 589, 608-09 (1978) ("The First Amendment generally grants the press no right to information

about a trial superior to that of the general public."); *Branzburg*, 408 U.S. at 684 ("It has generally been held that the First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally.") (citing cases).  Thus, this Court should make clear that Mr. Garcia's status as a credentialed journalist does not influence its analysis of his First Amendment right to document police activity occurring in public.

## CONCLUSION

For the reasons set forth herein, the Court should deny Defendants' Motion to Dismiss.

Respectfully submitted,


ROY L. AUSTIN, JR.
Deputy Assistant Attorney General
Civil Rights Division

JONATHAN M. SMITH
Chief
Special Litigation Section

TIMOTHY D. MYGATT
Special Counsel
Special Litigation Section


*/s/ Rashida J. Ogletree*
RASHIDA J. OGLETREE (DC Bar #974441)
SAMANTHA K. TREPEL (DC Bar #992377)
Trial Attorneys
U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, N.W.
Washington, D.C.  20530
Telephone:  (202) 305-3712
Facsimile:  (202) 514-0212
Email:  rashida.ogletree@usdoj.gov


Attorneys for the United States of America