IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MANNIE GARCIA,<br><br>                    Plaintiff,<br><br>        v.<br><br>MONTGOMERY COUNTY,<br>MARYLAND, *et al.*,<br><br>                    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

No. 12-cv-03592-JFM

**OPPOSITION TO DEFENDANTS' *AMENDED* MOTION
TO DISMISS/PARTIALLY DISMISS COUNTS I-VII
OF PLAINTIFF'S COMPLAINT AND FOR OTHER RELIEF**

Robert Corn-Revere (*pro hac vice*)
Ronald G. London (Md. Bar No. 16846)
Alison B. Schary (*admission pending*)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, N.W., Suite 800
Washington, DC  20006
Telephone:     (202) 973-4200
Facsimile:      (202) 973-4499

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ..................................................................................... 4

ARGUMENT .............................................................................................................. 7

I.      THE COMPLAINT STATES CLAIMS UNDER THE FIRST AMENDMENT .............. 8

        A.      The First Amendment Violation is Plain on the Face of the Complaint ................. 8

        B.      The Complaint Alleges First Amendment Violations By Each Officer ............... 11

II.     THE COMPLAINT STATES CLAIMS UNDER THE FOURTH
        AMENDMENT ................................................................................................... 15

III.    THE COMPLAINT PROPERLY STATES A *MONELL* CLAIM ................................... 18

        A.      *Monell* Pleading Requirements ............................................................. 19

        B.      *Monell* Claims Can Be Properly Plead Based on Ratification
                and/or Failure to Train .......................................................................... 22

        C.      It is Premature to Dismiss Defendants Sued in Official Capacities ...................... 22

IV.     THE COMPLAINT STATES A PRIVACY PROTECTION ACT CLAIM ................... 24

V.      DISMISSAL ON QUALIFIED IMMUNITY GROUNDS
        IS UNWARRANTED AND PREMATURE ................................................................... 27

        A.      There Is No Basis for Qualified Immunity From Plaintiff's Fourth
                Amendment Claims ............................................................................... 28

        B.      Qualified Immunity From PPA Claims ................................................. 32

VI.     THE COMPLAINT STATES A CLAIM FOR FALSE ARREST AND FALSE
        IMPRISONMENT ............................................................................................... 34

VII.    THE COMPLAINT STATES A CLAIM FOR MALICIOUS PROSECUTION ............ 36

VIII.   CONSIDERATION OF WHETHER AND HOW TO BIFURCATE THIS
        CASE IS PREMATURE AND OUTSIDE THE SCOPE OF THIS MOTION ................ 40

CONCLUSION .......................................................................................................... 42

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*ACLU v. Alvarez*,
   679 F.3d 583 (7th Cir. 2012) ......................................................................9, 11, 29

*Alvarez v. Montgomery County*
   147 F.3d 354 (4th Cir. 1990) .................................................................................40

*Ames v. Harford County*,
   No. RDB 09-1929, 2010 WL 1791547 (D. Md. May 4, 2010) ...................... *passim*

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).......................................................................................1, 7, 40

*Bass v. E.I. du Pont de Nemours & Co.*,
   324 F.3d 761 (4th Cir. 2003) ...................................................................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................ *passim*

*Benford v. American Broad. Cos., Inc.*,
   554 F.Supp. 145 (D. Md. 1982) .............................................................................33

*Binion v. City of St. Paul*,
   788 F.Supp.2d 935 (D. Minn. 2011)....................................................24, 25, 26, 32

*Carter v. Jess*,
   179 F.Supp.2d 534 (D. Md. 2001) .........................................................................30

*Channel 10, Inc. v. Gunnarson*,
   337 F.Supp. 634 (D. Minn. 1972).......................................................................9, 29

*Citicasters v. McCaskill*,
   89 F.3d 1350 (8th Cir. 1996) ...........................................................................24, 25

*City of Houston v. Hill*,
   482 U.S. 451 (1987).................................................................................................17

*Connell v. Town of Hudson*,
   733 F.Supp. 465 (D.N.H. 1990)..............................................................................18

*Crouch v. City of Hyattsville*,
   No. DKC 09-2544, 2012 WL 6019296 (D. Md. Nov. 30, 2012)................37, 38, 40

*Dawson v. Prince George's County*,
   896 F.Supp. 537 (D. Md. 1995)..............................................................................41

*Dunaway v. New York*,
  442 U.S. 200 (1979)................................................................................................15

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
  637 F.3d 435 (4th Cir. 2011) ........................................................... *passim*

*Edwards v. City of Goldsboro*,
  178 F.3d 231 (4th Cir. 1999) ....................................................................7, 8, 19

*Fernandes v. Montgomery County*,
  No. AW-10-cv-752, 2012 WL 1664086 (D. Md. May 10, 2012).....................30, 34

*Flood v. New Hanover County*,
  125 F.3d 249 (4th Cir. 1997) .............................................................................2

*Fordyce v. City of Seattle*,
  55 F.3d 436 (9th Cir. 1995) ..........................................................................9, 29

*Glik v. Cuniffe*,
  655 F.3d 78 (1st Cir. 2011).....................................................................8, 9, 11, 29

*Hall v. Burney*,
  454 F. App'x 149 (4th Cir. 2011) ..............................................................1, 7, 15

*Hall v. Marion County Sch. Dist. No. 2*,
  31 F.3d 183 (4th Cir. 1994) ..............................................................................18

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1992)....................................................................................28, 32

*Harrods v. Sixty Internet Domain Names*,
  302 F.3d 214 (4th Cir. 2002) ............................................................................31

*Hartman v. Moore*,
  547 U.S. 250 (2006)...........................................................................................29

*Howie v. Prince George's County*,
  No. DKC 2006-3465, 2009 WL 2426018 (D. Md. Aug. 5, 2009)........................13, 18, 24, 30

*Hunter v. Bryant*,
  502 U.S. 224 (1991)...........................................................................................31

*James v. Frederick County Pub. Schs.*,
  441 F.Supp.2d 755 (D. Md. 2006) ....................................................................20

*Johnson v. Prince George's County*,
  No. DKC 10-0582, 2012 WL 6086875 (D. Md. Dec. 5, 2012) ..............................41

*Jordan by Jordan v. Jackson*,
    15 F.3d 333 (4th Cir. 1994) ........................................................................ *passim*

*Kane v. Lewis*,
    No. L-08-1157, 2010 WL 1257884 (D. Md. Mar. 26, 2010)....................................23

*Knussman v. Maryland*,
    16 F.Supp.2d 601 (D. Md. 1998) ..............................................................................27

*Lanford v. Prince George's County*,
    199 F.Supp.2d 297 (D. Md. 2002)............................................................................20

*Leatherman v. Tarrant County Narcotics Intell. & Coord. Unit*,
    507 U.S. 163 (1993)..................................................................................................19

*Lee v. Hemingway*,
    No. WDQ-0-2-2843, 2003 WL 24153822 (D. Md. Dec. 16, 2003) .......................16

*Lefemine v. Wideman*,
    672 F.3d 292 (4th Cir.), *vacated on other grounds*, 133 S. Ct. 9 (2012) (*per curiam*) ..........27

*Lowe v. Spears*,
    258 F. App'x 568 (4th Cir. 2007) .............................................................................17

*Marryshow v. Town of Bladensburg*,
    139 F.R.D. 318 (D. Md. 1991)..................................................................................41

*Martinez v. Simonetti*,
    202 F.3d 625 (2d Cir. 2000)......................................................................................29

*Maryland State Conf. of NAACP Branches v. Baltimore City Police Dep't*,
    No. CCB-06-1863, 2006 WL 3626898 (D. Md. 2006)............................................31

*McCormick v. City of Lawrence*,
    289 F.Supp.2d 1264 (D. Kan. 2003) .........................................................................32

*McDaniel v Arnold*,
    No. ELH-10-189, 2012 WL 4903041 (D. Md. Aug. 21, 2012)........................33, 34

*Merchant v. Bauer*,
    677 F.3d 656 (4th Cir. 2012) ....................................................................................29

*Mercy v. Suffolk County*,
    93 F.R.D. 520 (E.D.N.Y. 1982)................................................................................23

*Migdal v. Rowe Price-Fleming Int'l, Inc.*,
    248 F.3d 321 (4th Cir. 2001) ......................................................................................7

*Miller v. Prince George's County,*
    475 F.3d 621 (4th Cir. 2007) ...............................................29

*Mills v. Alabama,*
    384 U.S. 214 (1966) ...............................................9

*Monell v. Department of Soc. Servs.,*
    436 U.S. 658 (1978) ............................................... *passim*

*Pearson v. Callahan,*
    555 U.S. 223 (2009) ...............................................28

*Presley v. City of Charlottesville,*
    464 F.3d 480 (4th Cir. 2006) ...............................................11, 28

*Pritchett v. Alford,*
    973 F.2d 307 (4th Cir. 1992) ...............................................15

*Randall v. Prince George's County,*
    302 F.3d 188 (4th Cir. 2002) ...............................................12, 13, 18, 24

*Roaden v. Kentucky,*
    413 U.S. 496 (1973) ...............................................13

*Robinson v. Fetterman,*
    378 F.Supp.2d 534 (E.D. Pa. 2005) ...............................................9, 29

*Rogers v. Pendleton,*
    249 F.3d 279 (4th Cir. 2001) ...............................................15

*Ross v. Cecil County Dep't of Soc. Servs.,*
    878 F.Supp.2d 606 (D. Md. 2012) ...............................................7, 14, 15, 35

*Rossignol v. Voorhaar,*
    316 F.3d 516 (4th Cir. 2003) ...............................................13, 29

*Saucier v. Katz,*
    533 U.S. 194 (2001) ...............................................28, 31, 32

*Sennett v. United States,*
    667 F.3d 531 (4th Cir. 2012) ...............................................24, 25, 26, 33

*Skibo v. City of New York,*
    109 F.R.D. 58 (E.D.N.Y. 1985) ...............................................23

*Smith v. City of Cumming,*
    212 F.3d 1332 (11th Cir. 2000) ...............................................9, 29

*Soldal v. Cook County,*
    506 U.S. 56 (1992)...........................................................................................11

*Spell v. McDaniel,*
    591 F.Supp. 1090 (E.D.N.C. 1984)..........................................................23, 35

*Spell v. McDaniel,*
    824 F.2d 1380 (4th Cir. 1987) ........................................................................24

*Stewart v. Prince George's County,*
    No. AW-01-302, 2001 WL 759890 (D. Md. May 23, 2001)..............................41

*Suarez Corp. Indus. v. McGraw,*
    202 F.3d 676 (4th Cir. 2000) ..........................................................................14

*Swagler v. Harford County,*
    No. RDB 08-2289, 2009 WL 1575326 (D. Md. June 2, 2009),
    *aff'd in relevant part sub nom.,*
    *Swagler v. Neighoff*, 398 F. App'x 872 (4th Cir. 2010)................................. *passim*

*Swanson v. Powers,*
    937 F.2d 965 (4th Cir. 1991) ..........................................................................33

*Tobey v. Jones,*
    Nos. 11-2230, 11-2276, 2013 WL 286226 (4th Cir. Jan. 25, 2013)...............14, 28

*United States v. James Daniel Good Real Prop.,*
    510 U.S. 43 (1993)...........................................................................................11

*Wilson v. Kittoe,*
    337 F.3d 392 (4th Cir. 2002) ..........................................................................17

*Wood v. Breier,*
    54 F.R.D. 7 (E.D. Wis. 1972) .........................................................................23

**STATE CASES**

*Brown v. Dart Drug Corp.,*
    551 A.2d 132 (Md. Ct. Spec. App. 1989)........................................................39

*Diehl v. State,*
    451 A.2d 115 (Md. 1982) ................................................................................16

*Elliott v. Kupferman,*
    473 A.2d 960 (Md. Ct. Spec. App. 1984)........................................................36

*Romanesk v. Rose,*
    237 A.2d 12 (Md. 1968) ..................................................................................39

*Smith v. Danielczyk*,
    928 A.2d 795 (Md. 2007) ........................................................................................35

*Wells v. State*,
    642 A.2d 879 (Md. Ct. Spec. App. 1994) .............................................................39

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. I ......................................................................................... *passim*

U.S. Const. amend. IV ...................................................................................... *passim*

U.S. Const. amend. XIV ......................................................................................8, 15

**FEDERAL STATUTES**

42 U.S.C. § 1983 ...............................................................................................18, 23

42 U.S.C. § 2000aa ........................................................................................... *passim*

**STATE STATUTES**

Maryland Criminal Law Code § 10-201 ...........................................................10, 16

Maryland Cts. & Jud. Proc. Code § 5-301, *et seq*....................................27, 34, 35, 37

**RULES**

Fed. R. Civ. P. 12(b)(6)..................................................................................... *passim*

Fed. R. Civ. P. 42(b) ..............................................................................................41

Fed. R. Evid. 803(8)...........................................................................................23-24

## OPPOSITION TO DEFENDANTS' *AMENDED* MOTION
## TO DISMISS/PARTIALLY DISMISS COUNTS I-VII
## OF PLAINTIFF'S COMPLAINT AND FOR OTHER RELIEF

Plaintiff Mannie Garcia, by and through undersigned counsel, hereby opposes the motion to dismiss certain Defendants and/or whole counts of his Complaint in this matter.  Plaintiff respectfully submits that this Court should deny the *Amended* Motion to Dismiss/Partially Dismiss Counts I-VII of the Complaint ("Mot.") brought under Fed. R. Civ. P. 12(b)(6) by Defendants Montgomery County, Montgomery County Police Department ("MCPD") Chief of Police Thomas Manger, MCPD Officers Christopher Malouf, Kevin Baxter, and Michael Graves, and MCPD Lieutenant Mark Sheelor.  Mr. Garcia's Complaint goes well beyond the prerequisite of providing "fair notice" of each claim and the "grounds on which it rests," and alleges sufficient facts that, taken with inferences arising from them, state "plausible claims" for relief that easily "rise above the speculative level."  *E.g.*, *Hall v. Burney*, 454 F. App'x 149, 150 (4th Cir. 2011) (citing, *inter alia*, Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

### PRELIMINARY STATEMENT

Defendants' responses to Mr. Garcia's Complaint place them on an odd and disingenuous path.  In seeking additional time to answer, "Counsel for Defendants agree[d] that Plaintiff has alleged sufficient facts against Defendant Malouf in his personal capacity under Counts I, II, III, VI, VII and VIII," which state claims under the First and Fourth Amendments, and for false arrest and imprisonment, malicious prosecution, and battery.[1]  The remaining Defendants then scatter for cover in a Motion to Dismiss amid a barrage of denials of personal involvement and

---

[1] Def. Officer Malouf's Mot. for Ext. of Time to File Answer to Counts I, II, II [*sic*], VI, VII and VII [*sic*] of Compl. ¶ 5 (emphasis added).

invocations of various immunities. Yet at the same time, and contrary to the extension motion's concession, the remainder of the Motion to Dismiss and its later amendment assert that the Complaint has not, after all, alleged sufficient facts against even Officer Malouf, except as to common law battery.

Even taking this disjointed defense at face value, it is obvious that the Complaint contains sufficient allegations to support each claim. The battery – which Defendants' initial filings agree is properly alleged – was part of Officer Malouf's conduct alleged in the Complaint that forced Mr. Garcia to cease the lawful exercise of his First Amendment right to video-record police officers while they conducted official business in a public place. The battery was also part of the arrest of Mr. Garcia, which no Defendant denies occurred. The Complaint alleges the battery violated Mr. Garcia's Fourth Amendment rights, and this also serves as the foundation for the Complaint's false arrest and imprisonment, and malicious prosecution claims.

Accordingly, the battery alone (that Defendants concede is properly alleged) cannot be divorced from the Complaint's other claims, which arise out of the same operative facts. What remains are factual questions regarding (among other things) what Officer Malouf actually did to Mr. Garcia, the extent to which Officers Baxter and Graves were complicit in those transgressions, how Lieutenant Sheelor's failings contributed to them, and the relationship of MCPD policies and decision-makers to the conduct underlying Mr. Garcia's constitutional and common law claims. As Defendants acknowledge, even if the Complaint's factual allegations could be considered "doubtful" – which they cannot – the Court must operate "on the assumption that all the allegations … are true," viewing them "in the light most favorable" to Mr. Garcia. Mot. 5 (quoting *Twombly*, 550 U.S. at 555, and citing *Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir. 1997)). Thus, taking only the parts of the Complaint that Defendants do not challenge

as insufficiently pled, each of Mr. Garcia's claims should survive dismissal under F.R.C.P. 12(b)(6) at this early, pre-discovery phase of litigation.

Of course, the Complaint alleges much more than what Defendants concede is sufficiently pled. It plainly alleges the Defendant Officers targeted Mr. Garcia for exercising his First Amendment right to video-record police officers conducting official business in a public place. It alleges that Officer Malouf then arrested Mr. Garcia without provocation or probable cause, but instead for having the temerity to identify himself as a member of the press entitled to continue his video-recording. It further alleges that at least one of Officers Graves or Baxter, and perhaps both, cursed and/or threatened Mr. Garcia's wife when she tried to determine why her husband was being arrested. In addition, the Complaint alleges that – at a minimum – Officers Graves and Baxter stood idly by while Officer Malouf arrested Mr. Garcia without probable cause, brutally battered him, and confiscated his camera and video card, and that this was facilitated by threats to his wife. The Complaint goes on to allege that Officer Malouf removed the video card from the camera and stashed it in his pocket, after which he booked Mr. Garcia into custody. It further alleges that all three officers participated in a sham prosecution in an effort to justify their treatment of Mr. Garcia. And it alleges that this conduct occurred despite written County policy to the contrary, and was ratified through failures by County decision-makers to conduct a proper investigation or to discipline the Officers for their conduct.

Viewed in that context, and read in the light required by F.R.C.P. 12(b)(6) and precedent applying it, the Motion to Dismiss is riddled with improper disputes of fact, as well as with misstatements of law and straw men. Mr. Garcia has alleged sufficient facts to survive a motion to dismiss his claims for constitutional violations, municipal liability, violation of the Privacy Protection Act, 42 U.S.C. § 2000aa ("PPA"), and tort liability, while Defendants' improperly

quibble over whether Mr. Garcia can develop and marshal evidence to support his claims. The fact that the United States, through the Department of Justice's Civil Rights Division ("DOJ") has taken the unusual step of filing a Statement of Interest ("SOI") in this case only underscores the seriousness of Mr. Garcia's charges, and makes clear they cannot be so easily brushed aside. Consequently, for the reasons set forth below, Defendants' motion should be denied.

## FACTUAL BACKGROUND

As set forth in the Complaint,[2] Mr. Garcia is an award-winning freelance photojournalist and a credentialed member of the White House press corps for 20 years, whose photos have appeared in leading national and international publications. (Compl. ¶ 6.) On June 16, 2011, Mr. Garcia was peaceably video-recording MCPD officers making an arrest in public, in a manner and at a distance that did not interfere with police activity. *Id.* ¶¶ 16-18. Despite written Department policies stating, in relevant part, that "[u]nder no circumstances should the media be held back from an area where the general public has access," and that "no police officer shall take any action to prevent or interfere with the news media in photographing or televising an event, a suspect, [or] an accused person," the officers shined a spotlight on Mr. Garcia that impeded his video recording and caused him to move further away from the scene. *Id.* ¶ 18, 39.

Even after Mr. Garcia moved further away, Officer Malouf accosted Mr. Garcia, who identified himself as a member of the press, and showed he was peaceful and possessed nothing but a camera. Despite a lack of probable cause, Officer Malouf seized Mr. Garcia, terminating any video recording, and shouted that he was under arrest. Officer Malouf then placed Mr. Garcia in a chokehold, dragged him across the street to the other officers and a police

---

[2] This presentation of the facts is consistent with the Defendants' "Allegations of Fact in the Complaint" in their Motion to Dismiss, and does not seek to dispute their recitation, but rather to simply serve as context for the legal arguments that follow.

cruiser, and confiscated his camera.  *Id*. ¶¶ 19-23.   Officer Malouf physically and verbally abused Mr. Garcia throughout the incident.  As he forcibly dragged Mr. Garcia across the street, he threw him to the ground along the way.  While Mr. Garcia was handcuffed, Officer Malouf kicked his foot out from under him, causing Mr. Garcia to fall and hit his head on the police cruiser.  As Mr. Garcia fell, Officer Malouf laughed and taunted him.  As Mr. Garcia's wife emerged to see what was happening, another officer cursed her as a "fucking bitch" and threatened to arrest her if she came any closer to inquire or intercede on Mr. Garcia's behalf.  *Id*. ¶¶ 24-27.  The other officers made no effort to interfere with Mr. Garcia's arrest or the brutal abuse he suffered during it.

Mr. Garcia did not resist the officers or take any action to provoke them.  *Id*. ¶ 25.  Other than identifying himself as a member of the press, Mr. Garcia did not speak to the officers prior to his arrest.  *Id*. ¶ 21.  No officer at the scene told Mr. Garcia what he was being charged with, nor did they provide *Miranda* warnings.  *Id*. ¶ 28.

Mr. Garcia was placed in a police cruiser and driven to the Wheaton/Glenmont Police Station.  In the cruiser, Mr. Garcia watched Officer Malouf remove the video card from his camera and stash it in his shirt pocket.  Mr. Garcia was then booked at the station, charged with disorderly conduct based on a fabricated police report, and held in custody for several hours.  *Id*. ¶¶ 29-32.  Upon Mr. Garcia's release, most of his property was returned to him, but the video card from his camera – which would have contained footage of the events leading up to his arrest – was never returned, and remains missing to this day.  *Id*. ¶ 35.

In an attempt to justify their treatment of Mr. Garcia, Montgomery County pursued prosecution against Mr. Garcia for disorderly conduct, despite the fact that its evidence showed

there was no probable cause to arrest Mr. Garcia and he had not been disorderly in any way.  On December 16, 2011, Mr. Garcia was exonerated of these baseless charges.  *Id*. ¶¶ 36-37.

Mr. Garcia's arrest was a direct violation of MCPD written policy on media relations. The officers' utter disregard for Mr. Garcia's rights illustrates a lack of training and supervision, which was compounded by the MCPD's failure to properly investigate and discipline its officers for blatantly violating Mr. Garcia's rights and their own written policies.  *Id*. ¶¶ 38-39.  In particular, the principal investigator, then-Sergeant – now-Lieutenant – Sheelor of Internal Affairs, among other things "forgot" to record any interviews with the officers investigated, or to even take any notes, though other witnesses were contacted and their interviews were recorded, including those of Mr. Garcia and his wife.  Meanwhile, as the "investigation" was ongoing, Lieutenant Sheelor also provided assistance to the same officers he was purporting to investigate in their criminal trial against Mr. Garcia.  *Id*. ¶¶ 40-42.  Despite Mr. Garcia's acquittal, Internal Affairs informed him it had determined there were "no administrative violations."  The Director of Internal Affairs ratified this finding, supposedly "after careful review" of "all pertinent information," despite the fact that Lieutenant Sheelor had neglected to record or take notes of his interviews with the officers investigated.  *Id*. ¶¶ 43-44.

Officers Malouf, Baxter and Graves were never subjected to any disciplinary action for their actions toward Mr. Garcia that violated both his clearly established constitutional rights and the MCPD's own written policies.  In fact, Officer Malouf has since been promoted to Detective with the MCPD.  (Malouf Ans. ¶ 9.)  Over the period of time since Mr. Garcia's Internal Affairs complaint and the initial filing of his civil suit, Mr. Garcia has observed some of the arresting officers cruising his neighborhood and parking directly in front of his house, in a continuing effort to intimidate him.  (Compl. ¶ 45.)

## ARGUMENT

The facts alleged in the Complaint, as summarized above, are more than sufficient to defeat a motion to dismiss. The "not onerous" pleading burden requires no more than "a short plain statement of the claim showing that [the plaintiff] is entitled to relief" through "facts … sufficient to state a claim to relief that is plausible on its face," and that "allow the court to draw the reasonable inference that the defendant[s are] liable."[3]  Indeed, in civil rights cases, the bar for dismissal is even higher. As this Court has noted, "[w]here, as here, Defendants seek to dismiss … civil rights [claims], this Court must be especially solicitous of the wrongs alleged and must not dismiss … unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged*." *Ames v. Harford County*, No. RDB 09-1929, 2010 WL 1791547, at *3 (D. Md. May 4, 2010) (internal quotation marks and citation omitted). *See also Hall*, 454 F. App'x at 150 (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). *Cf.* U.S. SOI at 2 ("[C]ourts should view [] charges [like disorderly conduct] skeptically to ensure that individuals' First Amendment rights are protected."). This rule bears even greater weight here, where, in the course of arresting and beating Mr. Garcia in violation of his rights, Defendants unlawfully seized a memory card containing video that would have shown what happened, then "lost" it after the fact. (Compl. ¶¶ 30, 35, 46.)

Given the Court's duty to accept as true all of the Complaint's factual allegations and to draw all reasonable inferences from them in Mr. Garcia's favor, *du Pont*, 637 F.3d at 440, it is particularly premature for Defendants to seek dismissal given that there are – at a minimum –

---

[3]  *Ross v. Cecil County Dep't of Soc. Servs.*, 878 F.Supp.2d 606, 614-15 (D. Md. 2012) (quoting *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *Bass v. E.I. du Pont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003); *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).

obvious questions of fact.  That is especially the case where so many of the asserted grounds for dismissal rest on claims that one Defendant or another was not "personally involved" in the incidents alleged in the Complaint.  Accordingly, the Motion to Dismiss must be denied.

## I.    THE COMPLAINT STATES CLAIMS UNDER THE FIRST AMENDMENT

Defendants' motion to dismiss Mr. Garcia's First Amendment claims is wholly at odds with a well-settled body of precedent.[4]  The Complaint alleges that Mr. Garcia was peaceably video-recording the Defendant Officers in a public place, in a manner and at a distance that did not interfere with them, that he identified himself as a member of the press, and that he was forced to stop video-recording when Officer Malouf accosted him, arrested him, and battered him, while Officers Baxter and Graves did nothing to stop the abuses but rather facilitated the arrest by threatening Mr. Garcia's wife.  (Compl. ¶¶ 19-27.)  This treatment is utterly at odds with cases that repeatedly have made clear that protection of the freedoms of speech and of the press give citizens the right to photograph public officials performing duties in public settings.  *Accord* U.S. SOI at 5 ("[T]he breadth of the First Amendment's protections" safeguard against the Officers "forcibly arresting Mr. Garcia and seizing his camera [and]  stop[ing him] from photographing a matter of public interest and … from distributing those photographs to the public.").

### A.    The First Amendment Violation is Plain on the Face of the Complaint

As the First Circuit recently reaffirmed, "a citizen's right to film government officials, including law enforcement officers, in the discharge of their duties in a public space is a basic, vital, and well-established liberty safeguarded by the First Amendment."  *Glik v. Cuniffe*,

---

[4]  Defendants labor under a misimpression that Mr. Garcia's Complaint raises "substantive due process" claims.  *E.g.*, Mot. 19-20.  However, the Complaint invokes the Fourteenth Amendment only insofar as the First Amendment applies to states by virtue of the Fourteenth Amendment.  *See*, *e.g.*, *Edwards*, 178 F.3d at 245 n.10.

655 F.3d 78, 85 (1st Cir. 2011).  "Gathering information about government officials in a form that can be readily disseminated to others serves a cardinal First Amendment interest in protecting and promoting the 'free discussion of governmental affairs.'"  *Id.* at 82 (quoting *Mills v. Alabama*, 384 U.S. 214, 218 (1966)).  Furthermore, "making an … audiovisual recording is necessarily included within the First Amendment's guarantee of speech and press rights as a corollary of the right to disseminate the [] recording."  *ACLU v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012).  "Basic First Amendment principles, along with case law from [multiple] circuits … unambiguously" confirm "there is a constitutionally protected right to videotape police carrying out their duties in public."[5]

Significantly, the cases reinforcing this right do not claim to break new ground.  Rather, they locate the right under long-standing, well-settled precedents that state basic constitutional precepts, based on "the fundamental and virtually self-evident nature of the First Amendment's protections in this area."  *Glik*, 655 F.3d at 85.  *See also*, *e.g.*, *ACLU*, 679 F.3d at 594-603.  As DOJ succinctly agrees, "[i]t is now settled law that the First Amendment protects individuals who photograph or otherwise record officers engaging in police activity in a public place."  U.S. SOI at 4.  *See also id.* at 5-8, 12-13 (citing cases).

Defendants presume Mr. Garcia's arrest cannot violate both the First and Fourth Amendments.  *See* Mot. 20-21.  They are entirely mistaken.  *See* U.S. SOI at 1 ("[B]oth the First and

---

[5]  *ACLU*, 679 F.3d at 601-02.  *See also, e.g.*, *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) ("The First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest."); *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995) (recognizing "First Amendment right to film matters of public interest"); *Robinson v. Fetterman*, 378 F.Supp.2d 534, 541 (E.D. Pa. 2005) (finding "no doubt" that First Amendment protected plaintiff who videotaped police officers, as "[v]ideotaping is a legitimate means of gathering information for public dissemination and can often provide cogent evidence"); *Channel 10, Inc. v. Gunnarson*, 337 F.Supp.634, 638 (D. Minn. 1972) ("[E]mployees of the news media have a right to be in public places … to gather information, photographically or otherwise.").

Fourth Amendments protect an individual who peacefully photographs police activity on a public street."); *id*. at 4 ("Because recording police officers in the public discharge of their duties is protected speech, when a person is arrested for recording police officers in a public place, both the First and Fourth Amendments are implicated.").  First, Defendants disingenuously assert that the Complaint "admits Plaintiff was arrested for willfully acting in a disorderly manner," *i.e.*, for disorderly conduct in violation of Maryland Criminal Law Code § 10-201.  Mot. 21 (citing Compl. ¶¶ 32-33).  But the Complaint does nothing of the kind.  The cited paragraphs state only how Mr. Garcia was <u>charged</u>, while further explaining that "disorderly conduct" charges are not properly brought against conduct and speech protected by the First Amendment, and that the prerequisite disturbance of actual members of the public was <u>absent</u>.

More importantly, the very next paragraph alleges that the police report of the incident was a fabrication, and that – in fact – at no time did Mr. Garcia shout or behave in a disorderly manner, much less use profanity, which is corroborated by eyewitness accounts.  Elsewhere, the Complaint explains that the real reason for the arrest and prosecution (and beating) of Mr. Garcia was his exercise of the above-noted constitutional right to video-record law enforcement officials carrying out their duty in public.  *See, e.g.*, Compl. ¶¶ 19-22, 36.  These allegations are more than sufficient to support Mr. Garcia's claims for violation of the First Amendment.  That is especially true given that, as DOJ's explains, "discretionary charges, such as disorderly conduct … are all too easily used to curtail expressive conduct or retaliate against individuals for exercis-ing their First Amendment rights."  U.S. SOI at 1-2.  *See also id*. at 2 ("[C]ourts should view such charges skeptically to ensure that [] First Amendment rights are protected."); *id*. at 4 ("Arrests involving such activity should receive the highest level of scrutiny, particularly if the charges involved are highly discretionary, such as disorderly conduct …."); *id*. at 8 ("Because

recording public police activity is protected by the First Amendment, courts … should view discretionary charges brought against individuals engaged in protected speech with considerable skepticism.").

Second, even if Mr. Garcia had not been arrested and beaten, the Defendant Officers' interference with his video-recording of an arrest in a public place plainly violates the First Amendment. *See, e.g.*, *Glik*, 655 F.3d 78; *ACLU*, 679 F.3d 583. This also would be the case even if it was unaccompanied by confiscation of Mr. Garcia's camera and memory card. These unlawful seizures do not erase the First Amendment violation; instead, they only exacerbate the constitutional violation, as does the memory card's subsequent "disappearance." [6] The moment the Defendant Officers acted to impede or, as it ultimately played out, terminate Plaintiff's recording police activity on a public street, the First Amendment was implicated. "To the extent that Defendants argue that Mr. Garcia must choose between two applicable constitutional provisions, this position is inaccurate." U.S. SOI at 8 (citing *Presley v. City of Charlottesville*, 464 F.3d 480, 485 (4th Cir. 2006); *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 49 (1993); *Soldal v. Cook County*, 506 U.S. 56, 70 (1992)).

**B.    The Complaint Alleges First Amendment Violations By Each Officer**

The Complaint plainly contains sufficient allegations to state a claim against each of the individual Officers at the scene for violation of Mr. Garcia's First Amendment rights. As the Complaint alleges, Defendant Malouf stopped Mr. Garcia from filming, thus interfering with First Amendment protected activity, and then reinforced this interference by arresting Mr. Garcia, bodily forcing him to stop recording, and by seizing his camera. Mr. Garcia alleges the arrest was provoked by his exercise of his First Amendment rights to film police activity in

---

[6]    *See also* U.S. SOI at 5 (disagreeing where "Defendants further allege that the officer's 'alleged seizure of the memory card is not a First Amendment violation'") (quoting Mot. 21).

public, thereby stating a claim against Defendant Malouf directly for violation of Mr. Garcia's First Amendment rights. Furthermore, while the seizures of Mr. Garcia, his camera, and his memory card also violate the Fourth Amendment, to the extent they prevented him from publishing the material on the card – which is a separate exercise of free speech rights – these allegations state claims for First Amendment violations as well. *Accord* U.S. SOI at 5 ("By forcibly arresting Mr. Garcia and seizing his camera, Defendants stopped Mr. Garcia from photographing a matter of public interest and prevented him from distributing those photographs to the public.").

Similarly, the complaint alleges Defendant Baxter participated in the unlawful arrest of Mr. Garcia for exercising his First Amendment rights and threatened his wife with arrest for inquiring about the treatment of her husband. (Compl. ¶¶ 18-28.) The Complaint also alleges Defendant Baxter initially flashed Mr. Garcia with a spotlight, which interfered with his First Amendment activity and forced him to move further away. *Id.* ¶ 18. While use of the flashlight for simple illumination may be one permissible inference from this action, *see* Mot. 21, 25-27, it can also be inferred that the light was used to interfere with Mr. Garcia's recording. And at this stage, the latter inference – that most favorable to Mr. Garcia – must be accepted.[7]

Any fair reading of the Complaint also reveals that it alleges Officers Baxter and Graves are chargeable with "bystander liability," which applies if an officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to pre-vent the harm; and (3) chooses not to act." *Randall v. Prince George's County*, 302 F.3d 188, 204 (4th Cir. 2002). Such "bystander liability is premised on a law officer's duty to uphold the

---

[7]    *du Pont*, 637 F.3d at 440. Furthermore, Defendant Malouf's Answer admits Defendant Baxter shined a spotlight, not a flashlight, and that he directed it on Mr. Garcia – not merely to search the darkness. Malouf Ans. ¶ 18.

law and protect the public from illegal acts, regardless of who commits them." *Id*. at 203. This arises from the "affirmative duty to intervene to protect the constitutional rights of citizens from … other law enforcement officers," which "attaches when an officer observes or has reason to know that a constitutional violation is being committed by other officers and possesses a realistic opportunity to intervene[.]" *Id*. at 203-04 (internal quotation marks and alterations omitted). "Bystander liability stems from the notion that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge." *Howie v. Prince George's County*, No. DKC 2006-3465, 2009 WL 2426018, at *6 (D. Md. Aug. 5, 2009) (quoting *Randall*, 302 F.3d at 204). Here, the Complaint alleges, or at a minimum allows reasonable inferences, that Officers Baxter and Graves observed Officer Malouf's unconstitutional acts toward Mr. Garcia, were able to intervene, and chose not to do so.

Seizing Mr. Garcia's camera, interfering with his recording, and confiscating the memory card, are all particularly egregious forms of prior restraint. *See Rossignol v. Voorhaar*, 316 F.3d 516, 521 (4th Cir. 2003). Such warrantless seizure of material protected by the First Amendment "calls for a higher hurdle … of reasonableness" under the Fourth Amendment. *Roaden v. Kentucky*, 413 U.S. 496, 504 (1973). Defendants are thus simply wrong that "none of [the] factual allegations establish a violation of [] First Amendment rights." Mot. 21.

Finally, the Complaint sufficiently alleges retaliation in violation of Mr. Garcia's First Amendment rights. To succeed on this claim, Mr. Garcia need only show that he engaged in protected speech, that Defendants took an allegedly retaliatory action which chilled or otherwise adversely affected Mr. Garcia's constitutionally protected speech, and that a causal relationship

exists between his speech and the Defendants' actions.[8]  Threats, coercion, or intimidation, if they intimate that some punishment, sanction, or adverse action will follow, adversely affect First Amendment rights.  *Ross*, 878 F.Supp.2d at 621.  Here, the Complaint alleges that, once the prosecution that attempted to justify the treatment of Mr. Garcia failed, the arresting officers conspicuously increased their presence on Mr. Garcia's street and, moreover, began parking in front of his residence.  (Compl. ¶¶ 45, 70-71.)  It further alleges this put Mr. Garcia in fear of further obstruction, harassment and detention if he continues recording newsworthy police activity in public.  (Compl. ¶ 71.)  It thus cannot be said that it "appears certain" that Mr. Garcia is not entitled to relief under "any legal theory which might plausibly be suggested" by these facts.  *See supra* at 7 (quoting *Ames*, 2010 WL 1791547, at *3).

Defendants claim dismissal is warranted because they insist the Complaint contains "no facts" that support Mr. Garcia's "personal opinion" that the increased police activity relates to his exercise of First Amendment rights, and that he does not specify which officers were involved, when the drive-bys occurred, or why Mr. Garcia concluded they were directed toward him for purposes of intimidation.  Mot. 22.  But the Complaint makes clear that the "arresting officers" engaged in the cruising, of which there are only three – Malouf, Baxter, and Graves – who are thus sufficiently identified.  It also sets forth timing that suggests intimidating motive; *i.e.*, the cruising began after Mr. Garcia was arrested and sought an Internal Affairs investigation, and after efforts to prosecute him failed.  As this Court explained in *Ross*, "temporal proximity provides [] circumstantial support for a causal connection."  878 F.Supp.2d at 621 (internal quotation marks and citation omitted).  The Complaint thus offers facts allowing an inference of

---

[8]  *See Tobey v. Jones*, Nos. 11-2230, 11-2276, 2013 WL 286226, at *5 (4th Cir. Jan. 25, 2013); *Ross*, 878 F.Supp.2d at 620-21 (citing *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 687-88 (4th Cir. 2000)).

retaliation – which must be taken in plaintiff's favor, *du Pont*, 637 F.3d at 440 – while "claims involving proof of a defendant's intent," which the Motion to Dismiss disputes, "seldom lend themselves to summary disposition." *Ross*, 878 F.Supp.2d at 621. Even if more detail ultimately may be required to prevail, that is the province of discovery, especially where the Complaint offers facts allowing an inference of retaliation.

## II.    THE COMPLAINT STATES CLAIMS UNDER THE FOURTH AMENDMENT

The Motion to Dismiss and other pleadings effectively concede that Mr. Garcia has stated a claim for violation of his Fourth Amendment rights, leaving only the question of who among the Defendants, *in addition to* Defendant Malouf, may also be liable.[9] The Fourth Amendment protects the "right of the people to be secure in their persons … against unreasonable searches and seizures." U.S. Const. amend. IV. There is no question that an arrest "is a seizure of the person." *Rogers v. Pendleton*, 249 F.3d 279, 290 (4th Cir. 2001). Furthermore, "Fourth Amendment seizures are 'reasonable' only if based on probable cause." *Dunaway v. New York*, 442 U.S. 200, 213 (1979). An officer has probable cause for arrest when the "facts and circumstances within the officer's knowledge [] are sufficient to warrant a prudent person, or one of reasonable caution, in believing … that the suspect has committed, is committing, or is about to commit an offense." *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992) (internal quotation marks and citation omitted). The Fourth Amendment also guarantees the right to be secure in one's effects, and prevents unreasonable seizures of personal property. U.S. Const. amend. IV. Given the allegations in the Complaint, it clearly states a claim that rises above "the speculative level" in this regard. *Hall*, 454 F. App'x at 150.

---

[9] Defendants' request for dismissal of the "Fourteenth Amendment due process claim" here, Mot. 23-24, is wrong for the same reasons it was wrong in the context of Mr. Garcia's First Amendment claim. *See supra* note 4. The Fourth Amendment claim does not invoke substantive due process.

The Complaint alleges Mr. Garcia was arrested for (and charged with) disorderly conduct in violation of § 10-201 and that his camera was seized – despite the absence of factual predicate or probable cause to support the charged offense.  As the Complaint alleges, Mr. Garcia was peaceably recording the Defendant Officers effectuating an arrest, from a distance and in a manner that did not interfere with or impede police activity.  Such photography is not a crime. The Complaint further alleges that, upon being approached by the Officers, Mr. Garcia identified himself as a member of the press and made other demonstrations of his peaceful intent, and that he did not provoke them, or even resist when physically abused.  Though there was never any indication that any member of the public was actually disturbed – which is a prerequisite for the offense of disorderly conduct – Mr. Garcia was arrested.[10]

"Core First Amendment conduct, such as recording a police officer performing duties on a public street, cannot be the sole basis for [] charges."  U.S. SOI at 2.  And, consistent with that precept, well-established case law interpreting and applying § 10-201 makes clear that the statute may not be used to prosecute conduct and speech protected by the First Amendment.  In particular, it has been the law for over three decades that a verbal protest against illegal police orders – even one that includes profanity – does not violate § 10-201 and cannot be punished constitutionally.  Even if Mr. Garcia had objected to his arrest, or had otherwise criticized or been disrespectful to the Officers – which the Complaint alleges did not occur – there would be no probable cause for a disorderly conduct charge/arrest.  *E.g.*, *Diehl v. State*, 451 A.2d 115 (Md. 1982); *Lee v. Hemingway*, No. WDQ-0-2-2843, 2003 WL 24153822 (D. Md. Dec. 16, 2003).

---

[10]    While at this stage, the facts and inferences must be construed in Mr. Garcia's favor, it is significant that even the facts as set forth in the police report made clear there was no probable cause to arrest Mr. Garcia for disorderly conduct.

Furthermore, objections to how police carry out their functions – even when voiced directly to the officers involved – cannot, consistent with the First Amendment, constitute punishable disorderly conduct. *See, e.g.*, *City of Houston v. Hill*, 482 U.S. 451, 462-63 (1987) ("The freedom of individuals verbally to oppose or challenge police action without [] risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."); *Wilson v. Kittoe*, 337 F.3d 392, 399 n.3 (4th Cir. 2002) ("Peaceful verbal criticism of an officer who is making an arrest cannot be targeted under a general obstruction of justice statute … without running afoul of the First Amendment."); *Lowe v. Spears*, 258 F. App'x 568, 570 (4th Cir. 2007) ("Arresting a person solely based on speech that questions or opposes police action violates the First Amendment."). Accordingly, "[c]ourts have routinely rejected officers' attempts to criminalize protected speech through … charges that rely heavily on the discretion of the arresting officer on both First and Fourth Amendment grounds." U.S. SOI at 9. Taking Mr. Garcia's allegations as true, it is plain his arrest was utterly without probable cause.

The only other grounds offered for dismissal of these claims are lack of personal involvement, and entitlements to various immunities. *But cf.*, Mot. 23 ("The real issue … is whether [Mr. Garcia's] arrest and seizure was appropriate under the Fourth Amendment.") As to the former, personal involvement,[11] the Complaint alleges more than a "mere implied presence of Officers Graves and Baxter somewhere in the vicinity of the detention of arrest." Mot. 25. All three Officers were on the scene. The Complaint specifically alleges Mr. Garcia was dragged back over to the cruisers where the arrest Mr. Garcia had attempted to film was carried out, including by Officers Graves and Baxter. The Complaint further alleges Officer Malouf was assisted in arresting Mr. Garcia by Officer Baxter's threat to arrest Mr. Garcia's wife, and by one

---

[11]   The immunities Defendants assert are addressed in Sections III.C and V, *infra*.

of the other two Officers (Graves or Baxter) making a similar threat and cursing Mr. Garcia's wife.  In addition, even apart from whatever assistance one or both of Officers Baxter or Graves may have provided Officer Malouf, they are just as chargeable with bystander liability for the violations of Mr. Garcia's Fourth Amendment rights as they are for the First Amendment violations.  *See supra* at 12-13 (citing *Randall*, 302 F.3d at 203-04; *Howie*, 2009 WL 2426018, at *6).  And all three officers played a role in the (failed) effort to prosecute Mr. Garcia.  Construing all the facts and inferences in Mr. Garcia's favor, the Complaint has more than sufficiently alleged personal involvement by each officer on the scene.

## III.    THE COMPLAINT PROPERLY STATES A *MONELL* CLAIM

Defendants' effort to dispose of the Complaint as to Montgomery County, at this early stage, without the benefit of discovery, is premature.  Municipalities such as the County here may be held liable under 42 U.S.C. § 1983 when the execution of a government policy or custom, that may be fairly said to represent its official policy, inflicts injury on a plaintiff.  *E.g.*, *Hall v. Marion County Sch. Dist. No. 2*, 31 F.3d 183, 195 (4th Cir. 1994) (citing *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978)).  Section 1983 allows municipalities to be held liable for constitutional violations committed by their employees if a municipality itself is responsible for causing constitutional deprivations.  *Jordan by Jordan v. Jackson*, 15 F.3d 333, 337-38 (4th Cir. 1994) (citing *Monell*).  *Monell* liability can also rest on ratification by a final policymaker.  *Marion County Sch. Dist.*, 31 F.3d at 189 (failure of municipal final decision-maker to respond to or criticize unconstitutional course of conduct by municipal official supported *Monell* liability); *id*. at 195-96 (municipality can be liable for allegedly unconstitutional acts of officials lacking final policymaking authority, if their actions are ratified by final policymakers).  *See also*, *e.g.*, *Connell v. Town of Hudson*, 733 F.Supp. 465, 472 (D.N.H. 1990).  In addition, *Monell* liability can lie based on constitutional violations caused by failure to train

police officers to, *e.g.*, avoid suppressing speech and to protect First Amendment rights.  *See, e.g.*, *Ames*, 2010 WL 1791547, at *10; *Jordan*, 15 F.3d at 341.

Defendants misleadingly characterize the Complaint as simply averring that, "because the officers in this case misbehaved, they must have been improperly trained and supervised."  Mot. 6.  The Complaint alleges much more than that.  It alleges the County never disciplined the Officers for their "misbehavior," that the County's investigation into their conduct was a sham, and that discipline was not forthcoming despite a written Police/Media Relations policy that the Officers plainly contravened, and despite the egregiousness of the violations of Mr. Garcia's rights.  It also alleges ongoing unlawful intimidation of Mr. Garcia for exercising First Amend-ment rights, undertaken by multiple members of the Department.  Such allegations are more than sufficient to state a claim for *Monell* liability, and Defendants' efforts to dismiss this claim at this early stage are without merit.

### A.    *Monell* **Pleading Requirements**

The level of factual specificity for *Monell* claims on which Defendants insist is not supported by the law.  "The Fourth Circuit has established a lenient pleading standard for official capacity suits" that requires but "a plain statement" of claims that gives "fair notice of what [the] claims [are] and the grounds on which they rest."  *Swagler v. Harford County*, No. RDB 08-2289, 2009 WL 1575326, at *11 (D. Md. June 2, 2009), *aff'd in relevant part sub nom.*, *Swagler v. Neighoff*, 398 F. App'x 872 (4th Cir. 2010) (quoting *Edwards*, 178 F.3d at 244); *see also id.* at *12 (citing *Leatherman v. Tarrant County Narcotics Intell. & Coord. Unit*, 507 U.S. 163, 168-69 (1993)).  A complaint's allegations suffice even if "not especially thorough," so long as they rise above being conclusory, *Swagler* at *11, as do the factual recitations here.  Even if it is not immediately apparent how Mr. Garcia may prevail against the County given the *Monell*

19

requirements that may apply on summary judgment and/or at trial, he is "entitled to proceed at least to the summary judgment stage" after searching discovery. *Jordan*, 15 F.3d at 341.

Additionally, there is no requirement that a complaint allege more than one incident of misconduct to withstand a motion to dismiss, *id.* at 338, notwithstanding Defendants' exhortations to the contrary. Mot. 6-8. The fact that a plaintiff "has not also alleged facts about other specific incidents … is not fatal at the motion to dismiss stage," but rather this Circuit "has made clear that a *Monell* plaintiff need not plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom and causation." *James v. Frederick County Pub. Schs.*, 441 F.Supp.2d 755, 762 (D. Md. 2006) (quoting *Jordan*, 15 F.3d at 339-40) (internal quotation marks omitted). Even if a defendant police officer insists his actions were proper, "[w]hile that contention may prove meritorious after a factual record has been established during discovery," allegations in a complaint that the plaintiff did not act in a manner meriting his treatment by the officer "are sufficient to state a claim." *Id.* at 758-59.

In the face of these clear statements of law, Defendants offer only a single district court case where, unlike here, the plaintiff failed to make any allegations beyond his own arrest and injury. *See* Mot. 7-8 (citing *Lanford v. Prince George's County*, 199 F.Supp.2d 297 (D. Md. 2002)). In contrast, Mr. Garcia alleges the Officers violated clear MCPD written policy, yet their actions went unpunished, that the County compounded the constitutional injuries surrounding Mr. Garcia's arrest by failing to properly investigate the incident, and that the arresting (and other) Officers engaged in a pattern of harassment and intimidation in his neighborhood. *Accord* Mot. 9 ("the Complaint alleges … actions of Officers Malouf, Baxter, and Graves, [] the ensuing malicious prosecution … , and … [an] inadequate Internal Affairs investigation").

20

The treatment Mr. Garcia endured also is not an isolated occurrence. As DOJ explains: "Several cases that have arisen recently regarding the recording of public police activity have involved discretionary charges such as disorderly conduct, loitering, disturbing the peace, and resisting arrest, being brought against the person engaged in the recording." U.S. SOI 8-9. In the neighboring jurisdiction of Prince Georges County, police officers have faced criminal charges for committing abuses similar to those Mr. Garcia alleges here. Reuben Castaneda and Matt Zapotosky, *2 Pr. George's Officers Are Indicted in Beating*, WASH. POST, Sept. 21, 2011, at B1. Similarly, in a civil rights case in which the United States also intervened to file a Statement of Interest in support of the constitutional claims, a private citizen was ordered to relinquish his cell phone by Baltimore Police after using it to photograph the arrest of a friend, and the police deleted all the videos. *See* U.S. SOI, Ex. A. *See also id.* Ex. B. While these occurrences did not take place in Montgomery County, discovery is necessary and appropriate based on the totality of facts alleged, to determine if the problem is more widespread here as well, and to learn of the County's role in allowing – or failing to prevent – incidents like that involving Mr. Garcia. Indeed, as DOJ further explains, "Mr. Garcia's status as a journalist and the existence of MCPD's media relations policy may be applicable to Mr. Garcia's claim that Montgomery County has a custom or practice of preventing members of the media from recording police activity and fails to train MCPD officers on its media policy." *Id.* at 12.

There is thus no requirement to overly detail the facts underlying a *Monell* claim, or to plead multiple incidents of constitutional violation that may be necessary at later stages to establish the existence of official policy or custom, and causation. *Jordan*, 15 F.3d at 339. *Compare* Mot. 7-8. Rather, "primary reliance must be placed on discovery controls and summary judgment" instead. *Jordan*, 15 F.3d at 340. This remains the law in this Circuit, even after

*Twombly.  See, e.g.*, *Ames*, 2010 WL 1791547, at *3, *10 (citing *Twombly* and *Jordan*); *Swagler*, at *3, *11 (same).  The Complaint's allegations accordingly suffice "to provide the County defendants notice of the nature of the claim[s] against them and the grounds on which [they] rest[], and it does not appear beyond doubt that there is no set of facts which … could prove" Mr. Garcia's claims.  *Jordan*, 15 F.3d at 340.

### B.    *Monell* Claims Can Be Properly Plead Based on Ratification and/or Failure to Train

Defendants ignore ratification and failure to train as separate bases for *Monell* liability.  Here, the Complaint alleges Mr. Garcia requested investigation of his treatment at the hands of the Defendant Officers, that a sham investigation ensued, and that no punishment or reprimand followed.  That is particularly telling given the existence of the MCPD policy on Police/Media Relations, which is antithetical to the Defendant Officers' treatment of Mr. Garcia.  These facts sufficiently allege ratification to defeat a 12(b)(6) motion.  *See Jordan*, 15 F.3d at 340.

The Complaint's allegations that the Defendant officers failed to follow that written policy – to the extreme prejudice of Plaintiff – is also a patently "obvious" indictment of the County's failure to train the officers in the Police/Media Relations policy as to give rise to an inference of deliberate indifference on the County's part.  *See, e.g.*, *Jordan*, 15 F.3d at 341.  At a minimum, the existence of an official written policy, which Defendants acknowledge, Mot. 8, and which the Officers ignored as alleged in the Complaint, permits an inference of failure to train, which is all that is necessary to overcome a motion to dismiss.  *Jordan*, 15 F.3d at 341.

### C.    It is Premature to Dismiss Defendants Sued in Official Capacities

Various of the Defendants sued in their official capacities seek dismissal of the claims against them, but such requests are clearly premature.  For example, Chief Manger's attempt to dispute personal involvement must await discovery.  Mot. 14, 21, 24, 29, 33, 34.  In any event, as

Chief Manger is the final policy-making authority for MCPD, an official capacity claim against him may proceed insofar as it seeks prospective injunctive relief, as does Mr. Garcia here. *See Swagler*, at *10. It is also premature to dismiss Lieutenant Sheelor, especially to the extent that his failure to investigate may have contributed to a prosecution that might otherwise have been dropped, and to the extent his investigation's failings may reflect ratification, custom or policy attributable to the County. Mot. 21, 24, 33, 34. Moreover, Lieutenant Sheelor's alleged complicity in the failed prosecution, even as his investigation was in progress, suffices to defeat a motion to dismiss.

Defendants' evidentiary objections as to the admissibility of Internal Affairs investigation reports are obviously premature. *See* Mot. 15. Even if the reports themselves are not admissible at trial – a proposition for which the Motion to Dismiss offers no authority – they would still be highly relevant in discovery to elicit testimony about the MCPD's decision not to investigate or discipline the arresting officers for their flagrant violation of department policy. For this reason, courts regularly order the production of such documents in *Monell* cases, even over objections of executive privilege.[12] Nor is it a foregone conclusion, as Defendants seem to assume, that the MCPD Internal Affairs investigation results would not be admissible at trial. *See, e.g.*, *Kane v. Lewis*, No. L-08-1157, 2010 WL 1257884, at *5 (D. Md. Mar. 26, 2010) (report by Maryland State Police Internal Affairs Section admissible under the hearsay exception in Fed. R. Evid.

---

[12] *See, e.g.*, *Spell v. McDaniel*, 591 F.Supp. 1090, 1114-21 (E.D.N.C. 1984) (ordering production of internal affairs and other investigative documents in § 1983 case, noting that, to prove failure to discipline allegations, plaintiffs "must have an opportunity to discover and review internal investigative files and reports"). *See also Wood v. Breier*, 54 F.R.D. 7, 9-13 (E.D. Wis. 1972) (ordering production of internal investigation file in § 1983 case, noting that "in that this is an investigation into the incident which is the basis for this lawsuit, almost by definition the file is highly relevant"); *Mercy v. Suffolk County*, 93 F.R.D. 520 (E.D.N.Y. 1982) (ordering production of internal affairs documents in § 1983 case); *Skibo v. City of New York*, 109 F. R.D. 58, 61-64 (E.D.N.Y. 1985) (production of internal affairs documents in § 1983 case, finding documents would be "crucial" to plaintiffs' ability to establish *Monell* liability).

803(8)).  *See also Spell v. McDaniel*, 824 F.2d 1380, 1394 (4th Cir. 1987) (upholding *Monell* liability jury verdict where internal affairs documents introduced at trial to show disregard of complaints of misconduct were "devastating" to defendants).

Officer Graves' request to be dismissed outright is perhaps the most premature of all.  As the Complaint alleges, Officer Graves was on the scene of Mr. Garcia's arrest and battery.  There is thus, at minimum, a foundation for bystander liability, as noted.  *See supra* at 12-13, 18 (citing *Randall*, 302 F.3d at 203-04; *Howie*, 2009 WL 2426018, at *6).  In addition, the Complaint alleges an unknown officer among the three present participated in the arrest by cursing/threating to arrest Mr. Garcia's wife, and that all three participated in attempting to prosecute Mr. Garcia. There are also allegations that as-yet unknown MCPD officers have attempted to intimidate Mr. Garcia for exercising his First Amendment rights.  These allegations all create questions of fact that preclude dismissing Officer Graves before Mr. Garcia can conduct any discovery.

## IV.    THE COMPLAINT STATES A PRIVACY PROTECTION ACT CLAIM

There are no grounds for dismissing Mr. Garcia's claims under the PPA, especially in view of the Complaint's allegations regarding the confiscation of his memory card containing images of police conduct that were intended for dissemination to the public.  (Compl. ¶¶ 17, 19, 22-23, 30, 35, 92-95.)  The PPA prohibits government officials from searching for and/or seizing documents and materials intended for publication, *Sennett v. United States*, 667 F.3d 531, 535 (4th Cir. 2012) (citing 42 U.S.C. § 2000aa(a)-(b)); *Citicasters v. McCaskill*, 89 F.3d 1350, 1353 (8th Cir. 1996)), and protects both work product and documentary materials.  *Binion v. City of St. Paul*, 788 F.Supp.2d 935, 948 (D. Minn. 2011).

The request to dismiss Mr. Garcia's PPA claim on jurisdictional grounds is misplaced. Defendants are simply incorrect in asserting the PPA applies only to State employees and thus cannot reach them as County/municipal officers.  Mot. 28-29.  As other cases demonstrate, PPA

claims lie against municipal police officers, *see generally*, *e.g.*, *Binion*, 788 F.Supp.2d at 947-48, as confirmed by a Fourth Circuit case on which Defendants themselves rely.  *See* Mot. 30 (citing *Sennett*, 667 F.3d at 535).  *Compare Sennett*, *passim* (addressing PPA claim against, *inter alia*, Prince William and Arlington County (Va.) police officers, without mention of any potential lack of jurisdiction).  *See also Citicasters*, 89 F.3d at 1351, 1356 (PPA claim against county prosecutor and Kansas City police officers remanded for full hearing on PPA liability).

Next, as with arguments discussed above, dismissal of Mr. Garcia's PPA claims based on supposed lack of personal involvement is premature.  Mot. 29.  That is especially true here, where the Complaint alleges Mr. Garcia's memory card made it as far as the Wheaton/Glenmont Police Station and never was returned, even after he later requested an investigation.  (Compl. ¶¶ 30, 35, 40-44, 46.)  There is no telling at this point, without the benefit of discovery, who may have played a role, in addition to Officer Malouf, in the memory card's disappearance.

The PPA claim also cannot be dismissed for failure to state a claim on the asserted ground that the Defendant Officers did not know Mr. Garcia was a member of the press and/or that they did not know he intended to publish the images captured on the video card.[13]  The Complaint pleads that the card contained work materials and that Garcia identified himself to the Defendant officers as a photojournalist (Compl. ¶¶ 19, 21-22, 39, 119), making the pictures for publication as a matter of course.  The Complaint also pleads that seizure of the memory card prevented him from licensing footage, again, reinforcing intent to publish.  (Compl. ¶¶ 84, 95.)

---

[13]  *See* Mot. 30.  Defendants argue in a footnote that, "[i]t is unclear how Plaintiff can know whether . . . other people [ostensibly, the Defendant Officers] knew him to be a photojournalist."  Mot. 27 n.3.  Once again, Defendants improperly raise factual disputes.  Mr. Garcia does not have to prove that he "knows" what others knew.  Rather, it is enough for the Complaint to include allegations – like the fact that Mr. Garcia "clearly and audibly identified himself as a member of the press" to the Officers before his arrest (Compl. ¶¶ 19, 21) – that support an inference that the Officers were aware of his photojournalist status before the search and seizure of the video card.

The fact that Defendants, after confiscating the memory card, managed to "lose" it, thereby preventing publication, does not change the analysis – rather, it only exacerbates the violation.

Dismissal also cannot be granted based on the PPA's "suspect exception."  Mot. 30. Under the "suspect exception," the PPA's prohibition on searches for materials intended for publication does not apply if there is probable cause to believe the person possessing the materials has committed or is committing the criminal offense to which the materials relate.  *See* 42 U.S.C. §§ 2000aa(a)(1), (b)(1).  However, law enforcement officers cannot make someone a suspect for purposes of exception by fabricating a reason to arrest – there must be, as stated in the statute's text, "probable cause."  *Id*.  *See also*, *e.g.*, *Binion*, 788 F.Supp.2d at 948 (suspect exception unavailable where there was no cause probable cause for arrest).  For reasons provided above, probable cause to arrest Mr. Garcia was lacking, or there are, at least, material questions of fact whether probable cause existed.  *See supra* Section II.  Accordingly, at a minimum, that question of fact precludes dismissing the PPA claim as well.[14]

Defendant's reliance on *Sennett* for the suspect exception is inapplicable here.   In *Sennett*, probable cause to arrest existed based on the facts that Sennett arrived in the middle of the night (2:30 a.m.) at what would soon thereafter become the scene of crimes, she arrived concurrently with the vandals she videotaped, she communicated with them in some fashion before the incident, she was wearing dark clothing and a backpack like the vandals, and she fled, in the same direction as the vandals, after the crimes were committed.  *See* 667 F.3d at 536. Here, all Mr. Garcia did was photograph the Defendant officers engaged in an arrest – protected First Amendment activity that violated no laws – and responded to Officer Malouf's approach by showing that his hands were empty and noting that he was a member of the press.  There was

---

[14]  Moreover, if probable cause had actually existed, the Defendants would have gone out of their way to <u>preserve</u> any evidence contained on the video card, not to lose it.

thus no reason for any Officer to believe Mr. Garcia was committing or had committed any crime, and thus no reason for finding the memory card related to any offense. [15]

## V.     DISMISSAL ON QUALIFIED IMMUNITY GROUNDS IS UNWARRANTED AND PREMATURE

Various Defendants improperly seek dismissal from this case on grounds of qualified immunity.  Mot. 26-27, 32-33.  These arguments raise factual questions that must be resolved in Mr. Garcia's favor at this stage of proceedings.[16]  Initially, no Defendant can be completely dismissed on grounds of qualified immunity because, even if applicable, it would shield only against the Complaint's claims for damages, and not those for declaratory or injunctive relief.[17]  Accordingly, full dismissal would be especially improper to the extent Mr. Garcia seeks injunctive relief against retaliation for exercising his First Amendment rights, as well as against the resumption of intimidation or further interference with his ability to photograph police officers conducting official business in public places.  It also must be acknowledged that <u>none</u> of the Defendants – including Officers Baxter and Graves – have invoked qualified immunity from the First Amendment claims.  The Motion to Dismiss only asserts qualified immunity on behalf of Defendant Officers Baxter and Graves as to Mr. Garcia's Fourth Amendment claims, and as to

---

[15]   Moreover, Defendants certainly have not treated the memory card as evidence of a crime. Not only did they fail to introduce it at Mr. Garcia's disorderly conduct trial, they allowed it to be "misplaced" and never returned it.  If anything, reliance on the PPA's "suspect exception" here essentially admits violation of the First Amendment.  In invoking the exception, Defendants essentially argue that the "crime" for which Mr. Garcia was arrested was videotaping.

[16]   To the extent that the County claims governmental immunity from Mr. Garcia's state common tort law claims, Mot. § VI, that does not absolve the County from potential responsibility for indemnifying the Defendant Officers under the Local Government Tort Claims Act.  Maryland Cts. & Jud. Proc. Code § 5-301, *et seq*. ("LGTCA").  *See infra* at 43-44.

[17]   *See*, *e.g.*, *Lefemine v. Wideman*, 672 F.3d 292, 303 (4th Cir.) ("Claims for declaratory and injunctive relief are not affected by qualified immunity."), *vacated on other grounds*, 133 S. Ct. 9 (2012) (*per curiam*); *Knussman v. Maryland*, 16 F.Supp.2d 601, 610 n.5 (D. Md. 1998).

the PPA on behalf of "Defendants" (either collectively, or as to some specific, but unidentified, Defendant(s)).  Accordingly, to the extent Mr. Garcia's First Amendment claims survive all Defendants named in that claim would remain in the case.

With regard to the Fourth Amendment and PPA, qualified immunity attaches only if Defendants show their actions alleged in the Complaint did not violate any clearly established statutory or constitutional rights of which a reasonable officer would have known.  Mot. 26 (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1992))).  That inquiry examines:  (1) whether a constitutional violation occurred, and (2) whether the right violated was clearly established.  *See, e.g.*, *Tobey v. Jones*, 2013 WL 286226, at *3 (citing *Pearson*, 555 U.S. at 236; *Saucier v. Katz*, 533 U.S. 194, 200 (2001)).  Taking the Complaint's allegations as true and all inferences in favor of Mr. Garcia, Defendants simply cannot show they are entitled to qualified immunity as a matter of law.

### A.    There Is No Basis for Qualified Immunity From Plaintiff's Fourth Amendment Claims

In raising their asserted qualified immunity defense to Mr. Garcia's Fourth Amendment claims, Defendants once again improperly raise factual arguments.  This is utterly inconsistent with precedent recognizing that "the purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, *or the applicability of defenses*."  *Presley*, 464 F.3d at 483 (emphasis added) (internal quotation marks and citation omitted).  As an initial matter, the Motion to Dismiss skips over – and thus concedes – the second prong of the qualified immunity analysis, *i.e.*, that Mr. Garcia had a clearly established Fourth Amendment right to be free from seizure of his person and effects, and from

arrest, where probable cause is absent.[18]  That concession is prudent, as the right to freedom from

unreasonable search and seizure has long been established in this jurisdiction and elsewhere.[19]

And, as explained above, the Complaint plainly alleges facts sufficient to state a claim for arrest

and seizure without probable cause.  *See* Section II, *supra*.

Perhaps recognizing that "probable cause or its absence will be at least an evidentiary

issue in practically all [] cases," *Hartman v. Moore*, 547 U.S. 250, 265 (2006), Defendants

Baxter and Graves instead fall back on their "it wasn't me" defense.  They insist they were

merely "assisting officer[s]" rather than "arresting officers," and in doing so try to narrow the

allegations against them to simply "shining [] a flashlight" (Officer Baxter) and being marginally

"somehow involved" in Mr. Garcia's arrest.  Mot. 27.  This is a deliberate misreading of the

Complaint, and an obvious mischaracterization of applicable law.  As explained in Section II, the

Complaint sufficiently alleges the roles of Officers Graves and Baxter in Mr. Garcia's unlawful

arrest, by asserting that they were not only present for, but participated in his unlawful arrest for

recording the police in public, in threats made to his wife to prevent her from interceding, in the

---

[18]   Though Defendants do not invoke qualified immunity from Mr. Garcia's First Amendment claims, any attempt to argue Mr. Garcia's First Amendment right to record the police in public was not "clearly established" would fall before the weight of precedent to the contrary. *See, e.g.*, *Glik*, 655 F.3d 78; *ACLU*, 679 F.3d 583; *Smith*, 212 F.3d 1332; *Fordyce*, 55 F.3d 436; *Robinson*, 378 F.Supp.2d 354; *Channel 10*, 337 F.Supp. 634.  *See also* U.S. SOI at 5-8, 12-13 (citing cases).  Similarly, the Fourth Circuit has held that suppressing information critical of the police violates the First Amendment.  *Rossignol*, 316 F.3d at 521 (seizure of newspapers critical of sheriff and deputies "clearly contravened the most elemental tenets of First Amendment law").  It is thus clear Defendants have no basis to argue their conduct did not violate Mr. Garcia's clearly established constitutional rights.

[19]   *See, e.g.*, *Miller v. Prince George's County*, 475 F.3d 621, 627 (4th Cir. 2007) ("Unquestionably, [t]he Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable.") (internal quotation marks and citation omitted); *Merchant v. Bauer*, 677 F.3d 656, 662, 665-66 (4th Cir. 2012) ("The constitutional right to be free from unreasonable searches and seizures is well settled."); *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) ("Without a doubt, the right not to be arrested without probable cause is clearly established.").

seizure of Mr. Garcia's effects, including his camera, and in failing to prevent Officer Malouf from violating Mr. Garcia's constitutional rights.[20]

Even were the Court to credit arguments of Officers Graves and Baxter that they engaged in no material conduct during Mr. Garcia's arrest, the Officers still would not be entitled to qualified immunity given the prospect of bystander liability. A reasonable inference can be made from the Complaint – and, if anything, is bolstered by claims of lack of personal involvement – that Officers Baxter and Graves observed Officer Malouf's unconstitutional acts toward Mr. Garcia, were able to intervene, and chose not to do so. Such "ability to respond to a fellow officer's illegal act is a genuine issue of material fact reliant on a number of factors, including:  how far [the officers] were located from Plaintiff; [and] how long it would take [them] to arrive at the scene of the arrest in order to intervene[.]"  *Howie*, 2009 WL 2426018, at *7. Accordingly, the prospect of bystander liability attaching, and defeating qualified immunity, also precludes dismissing Officers Baxter and Graves.

All Officers Graves and Baxter ultimately accomplish in invoking qualified immunity at this juncture is to underscore that there are questions of fact that preclude their discharge from this case. Qualified immunity cannot be resolved on an underdeveloped  record – and given con-flicting stories concerning what happened at the time of arrest, and especially Defendants' "loss" of a memory card that would have documented what occurred, dismissal under F.R.C.P. 12(b)(6)

---

[20]   The cases on which Officers Graves and Baxter rely in casting themselves as "assisting" rather than "arresting" officers are inapposite. *See* Mot. 26-27 (citing *Fernandes v. Montgomery County*, No. AW-10-cv-752, 2012 WL 1664086 (D. Md. May 10, 2012); *Carter v. Jess*, 179 F.Supp.2d 534 (D. Md. 2001)).  In each of those cases, police officers that received the benefit of qualified immunity arrived after the arrests in question, and thus could not be chargeable with knowing whether the arrests were supported by probable cause.  *Fernandes*, 2012 WL 1664086, at *3; *Carter*, 179 F.Supp.2d at 544-45.  Conversely, Officers Baxter and Graves were on the scene for the entire course of events involving Mr. Garcia's arrest, and took additional steps such as shining a light on him to interfere with his filming and/or threatening/cursing Mr. Garcia's wife.

is inappropriate. Rather, Mr. Garcia "deserve[s] an opportunity to engage in discovery before a full consideration of these claims is made at the summary judgment stage." *Ames*, 2010 WL 1791547, at *6; *see also id*. at *9 ("[T]he nature and extent of … officers' participation in the arrest and whether they are entitled to qualified immunity present contentious and fact-dependent issues" that are "more properly resolved after the completion of discovery.").

Even being "mindful of the importance of resolving immunity questions at the earliest possible stage," it is "premature to rule upon … qualified immunity at this juncture due to the undeveloped nature of the record," especially given that "whether there was a constitutional violation and whether it would be clear to a reasonable officer that his conduct was unlawful in the situation … are highly fact-dependent." *Swagler*, 2009 WL 1575326, at *7 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *Saucier*, 533 U.S. at 202) (internal quotation marks omitted)). *Cf*., *Maryland State Conf. of NAACP Branches v. Baltimore City Police Dep't*, No. CCB-06-1863, 2006 WL 3626898, at *2 (D. Md. 2006) (holding that "it would be premature to grant summary judgment in the face of conflicting affidavits involving … an individualized and fact specific inquiry into probable cause," and that it "would be premature to decide whether any [] defendant is entitled to qualified immunity before development of the particular facts against which the defense must be evaluated"). In such cases, "Plaintiffs deserve an opportunity to conduct thorough discovery." *Swagler*, at *7, *12 (citing *Harrods v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002)). *See also id*. at *8 (where the "story presented by the Defendants … clearly conflicts with the account … in the Plaintiffs' allegations," plaintiff "must be afforded a full opportunity [for] discovery."). That is certainly true of Mr. Garcia's claims here.

### B.    Qualified Immunity From PPA Claims

Invoking qualified immunity against Mr. Garcia's PPA claim also fails. Defendants do not cite any authority for the premise that qualified immunity can shield officers from liability

under the PPA.  The sole case on which Defendants rely, *McCormick v. City of Lawrence*, 289 F.Supp.2d 1264 (D. Kan. 2003), is entirely inapposite, as it did not involve a PPA claim.  As the *Binion* Court explained, in rejecting another misguided attempt to invoke *McCormick* against a PPA claim, "the *McCormick* court was not ruling on the elements of a claim under the Privacy Protection Act – as, again, no such claim was before the court.  Instead, the court was addressing the scope of privacy [] protected by the Fourth Amendment."  788 F.Supp.2d at 949 (citations omitted).  Defendants' claim of qualified immunity from Mr. Garcia's PPA claim is thus wholly misplaced to the extent it rests on notions of whether he had an expectation of privacy in the video card that was confiscated.  *See* Mot. 32-33.  It accordingly has not been shown qualified immunity can protect Defendants from Mr. Garcia's PPA claim.

Even if qualified immunity from PPA claims were available, the right to dismissal on that ground has not been established here.  Defendants' position reduces to arguing that because the PPA is not commonly cited, its prohibitions were not "clearly established" and the Defendant officers cannot be responsible for knowing about it.  *Id.*  This is a remarkable – and entirely unsupported – argument.  Whether a right based in a statute is "clearly established" does not turn on whether police officers have heard about it.  Rather, qualified immunity shields officers against liability for violation of a constitutional or statutory right whose "contours" are not "sufficiently clear."  *Saucier*, 533 U.S. at 202; *see also Harlow*, 457 U.S. at 818-19 (absent "extraordinary circumstances," immunity defense fails where a law is clearly established because "a reasonably competent public official should know the law governing his conduct").

For statutory rights, qualified immunity is more limited to instances where, for example, the law's language is so vague that it is unclear whether the statute applies to the conduct in

question,[21] or where an existing law is later called into question by courts.[22]  Here, Mr. Garcia's claim rests on circumstances that go to the heart of the PPA's statutory text.  Specifically, the Complaint alleges that the Defendant Officers searched and seized a memory card from Mr. Garcia's camera that contained materials he intended to disseminate to the public.  *Compare* 42 U.S.C. § 2000aa.  Defendants have pointed to no vague language in the PPA, nor to any conflicting legal interpretations or statutory enactments that would call into question whether the relevant provisions of the PPA were "clearly established" at the time.  As this Court recently recognized, "federal laws do not need judicial approval to … be clearly established" and "judicial precedent is not always necessary to clearly establish a statutory right, especially where the statute's 'core protections' are plain from the text."  *McDaniel v Arnold*, No. ELH-10-189, 2012 WL 4903041, at *15 (D. Md. Aug. 21, 2012) (internal quotation marks, alterations and citation omitted).  As a result, Defendants' bid for qualified immunity from Mr. Garcia's PPA claims must fail.[23]

---

[21]  *Compare Benford v. American Broad. Cos., Inc.*, 554 F.Supp. 145, 154 (D. Md. 1982) (denying qualified immunity for eavesdropping where definition of "oral communication" in federal eavesdropping statute was not vague and was "clearly established").

[22]  *E.g.*, *Swanson v. Powers*, 937 F.2d 965, 971 (4th Cir. 1991) (granting qualified immunity to revenue official for enforcement of state tax statute in years before it was held unconstitutional by the Supreme Court, since her actions did not violate statutory or constitutional rights that were "clearly established" at the time).

[23]  Furthermore, the discussion in Section IV above demonstrates that Mr. Garcia's rights under the PPA were violated.  Given the PPA's codification in federal law, and to a lesser extent, the Fourth Circuit decision in *Sennett*, which at minimum stands for the proposition that searching and seizing a camera's memory card violates the PPA unless the "suspect exception" applies, Mr. Garcia's rights under the PPA are clearly established.

## VI.    THE COMPLAINT STATES A CLAIM FOR FALSE ARREST AND FALSE IMPRISONMENT

The Complaint sufficiently alleges a claim for false arrest and false imprisonment, both of which require showing that Defendants deprived Mr. Garcia of his liberty without consent and without legal justification, which turns on whether there was probable cause for his arrest.[24]  The Motion to Dismiss does not dispute that Mr. Garcia was deprived of his liberty without consent. Moreover, the explanation at Section II, *infra*, as to why the Complaint states a claim for violations of Mr. Garcia's Fourth Amendment rights also demonstrates the required lack of probable cause for purposes of Mr. Garcia's false arrest and false imprisonment claims.  *See Fernandes*, *McDaniel*, *supra* note 24.  In addition, to the extent the Motion to Dismiss argues for dismissal of Count VI as to Officers Baxter and Graves based – again – on lack of personal involvement in Mr. Garcia's arrest, that recurring argument has been fully addressed.  *See supra* at 17-18.

All that remains of Officers Baxter's and Graves's brief argument for dismissal is an assertion that the Complaint fails to allege "evidence of actual malice."  Mot. 33-34.  Yet the Motion to Dismiss explains neither why a lack of malice – which is not an element of false arrest or false imprisonment – would be grounds to dismiss this claim, nor why "evidence" of malice is required at this stage.  *See du Pont*, 637 F.3d 435.  One can speculate, however, that the Officers' argument arises with an eye toward the LGTCA, which provides that a local government will provide a legal defense for employees sued for tortious acts in the scope of their government employment, and will pay any judgment ultimately entered against him, unless the employee acts

---

[24]    *E.g.*, *McDaniel*, 2012 WL 4903041, at *29; *Fernandes*, 2012 WL 1664086, at *3, *5.  In referring to Count VI being brought against "all Defendants," the Complaint did not intend to encompass Lieutenant Sheelor, who was not on the scene of the arrest and, to the best of Mr. Garcia's knowledge, did not get involved in the transgressions against him until the investigation of the Officers' conduct.  *But see infra* note 26.  *See also supra* note 16 (discussing Defendant Montgomery County's invocation of governmental immunity.

with actual malice.  But while the LGTCA dictates that government employees lose that right to indemnification if they act with malice, nowhere does it require <u>plaintiffs</u> to allege actual malice as an element of claims against local government officials. [25]  As the Maryland Court of Appeals has made clear:  "local government employees do not possess a direct immunity from liability for their tortious conduct under [the] LGTCA.  They may be sued, and judgments may be entered against them."  *Smith v. Danielczyk*, 928 A.2d 795, 814 (Md. 2007).  Actual malice only becomes an issue after judgment has been entered, and it is never relevant to the sufficiency of a plaintiff's claims for false arrest and imprisonment.

In any event, there can be no question whether the Complaint sufficiently alleges malice.  A complaint "need not expressly assert that [] defendants acted with malice … if it alleges facts that could establish actual malice if ultimately supported by evidence."  *Ross*, 878 F.Supp.2d at 623 (internal quotation marks and alterations omitted).  Rather, "facts showing ill-will or evil or wrongful motive are sufficient[.]"  *Id.* (internal quotation marks and citation omitted).  Here, the Complaint sufficiently alleged malice both explicitly and factually, by:

- describing the physical mistreatment of Mr. Garcia (Compl. ¶¶ 20, 24, 26, 55);

- recounting his arrest for exercising well-established First Amendment rights to video-record, with no rational reason to believe doing so constituted a crime (*id.* ¶¶ 97-100);

- alleging that Officer Malouf was visibly upset (*id.* ¶ 20), and taunted Mr. Garcia (*id.* ¶ 24); and

- noting that officers threatened to arrest Mr. Garcia's wife simply for inquiring what was happening (*id.* ¶¶ 26-27).

Additionally, malice may be inferred from the Complaint's allegations regarding:

---

[25]  Given the diverse interests and potential conflicts among the various Defendants, there is a question whether the County may provide adequate representation for all of them.

- confiscation of Mr. Garcia's memory card with evidence of the arrest (*id.* ¶¶ 30, 35, 46);

- the prosecution of Mr. Garcia as a (failed) attempt to justify his arrest (*id.* ¶¶ 36-37);

- internal investigation that apparently took place without creating any written or audio record of key participants, and that was further compromised by conflict of interest (*id.* ¶¶ 41-44); and

- commencement of police drive-bys of Mr. Garcia's home in an attempt to intimidate.

*Id.* ¶ 45. *Compare*, *e.g.*, *Ames*, 2010 WL 1791547, at *4. *Compare also Swagler*, at *4-5 (lack of allegation of violent manner of verbal abuse precluded inference of malice, but allegation of invasive strip searches and privacy violations supported malice inference), *with* Compl. ¶¶ 20, 24, 26, 27, 55.

While some of the bulleted conduct occurred after the arrest, it is all potential evidence of the Officers' and the County's mindset toward Mr. Garcia, which can contribute to a finding of malice. Together, the Complaint's recitation of these facts alleges with sufficient "clarity and precision" facts that make the Defendant officers' conduct malicious. *E.g.*, *Swagler*, 2010 WL 1923766, at *3 (citing *Elliott v. Kupferman*, 473 A.2d 960 (Md. Ct. Spec. App. 1984)). For all these reasons, the request for dismissal of Mr. Garcia's false arrest and false imprisonment claims lacks merit.

## VII.  THE COMPLAINT STATES A CLAIM FOR MALICIOUS PROSECUTION

The Complaint also sufficiently sets forth a malicious prosecution claim. This requires only that Mr. Garcia allege institution of a criminal proceeding against him, that was resolved in his favor, on a charge for which probable cause was lacking, and that Defendants acted with

malice, or for a primary purpose other than bringing Mr. Garcia to justice.[26]  These conditions are easily satisfied here:  The Motion to Dismiss concedes there is no dispute as to the first two elements, Mot. 35, and once again falls back on assertions that various Defendants lacked personal involvement, *id*. 36, which is thoroughly refuted above.  *See supra* at 17-18.  However, on this claim in particular, Lieutenant Sheelor's pretensions to lack of personal involvement are especially unavailing.  Mot. 34.  The Complaint alleges Lieutenant Sheelor colluded with the Defendant Officers involved in the criminal trial on the disorderly conduct charge against Mr. Garcia.  (Compl. ¶ 42.)  It also allows, at minimum, a reasonable inference that if Lieutenant Sheelor had conducted a prompt, unbiased, and thorough investigation, *contra id*. ¶¶ 41-44, it would have more quickly become clear the factual predicate for the charge was lacking, and the prosecution averted.

As to Defendants Officers Graves and Baxter, *see* Mot. 35, their role in the arrest is set forth above, and there is no dispute that, in addition to Officer Malouf, they were the principal witnesses for the prosecution.  As the officers on the scene, it is a reasonable inference that they provided the prosecutor with information on which the decision to prosecute rested.  The Complaint also plainly alleges they testified falsely that Mr. Garcia committed the offense of disorderly conduct (Compl. ¶ 110), which fact must be accepted for purposes of the Motion to Dismiss.  *See du Pont*, 637 F.3d 435.  In this connection, "it is irrelevant that [they] did not swear out the arrest warrant for Plaintiff because an individual may still be liable when he inspires in

---

[26]  *Crouch v. City of Hyattsville*, No. DKC 09-2544, 2012 WL 6019296, at *5 (D. Md. Nov. 30, 2012).  As with Mr. Garcia's other common law claims, we note Montgomery County's claim of governmental immunity, but note again its potential LGTCA duty to indemnify the Officers.  *See supra* note 16.  In addition, unlike Count VI, which did not necessarily intend to encompass Lieutenant Sheelor among "all defendants," *see id*., Lieutenant Sheelor engaged in sufficient conduct prior to Mr. Garcia's criminal trial to include him in Count VII's malicious prosecution claim.

any fashion a criminal proceeding against the plaintiff[.]"  *Crouch*, 2012 WL 6019296, at *3 (internal quotation marks and alterations omitted).

With respect to lack of probable cause, Defendants once again confuse F.R.C.P. 12(b)(6) with summary judgment, arguing that Mr. Garcia's malicious prosecution claim should be dismissed because he has not yet "establish[ed] a lack of probable cause."  Mot. 36.  Mr. Garcia is not required to "establish" anything in his Complaint; that is the purpose of discovery.  His allegations regarding lack of probable cause for his arrest are addressed above in the discussions of his Fourth Amendment and false arrest and imprisonment claims.  *See supra* 15-17, 26, 34.

The Motion to Dismiss erroneously suggests that Mr. Garcia is relying solely on the fact that he was acquitted by the criminal court due to the government's failure to prove its case beyond a reasonable doubt.  Mot. 36.  No doubt, the acquittal supports Mr. Garcia's showing of an absence of probable cause.  But the allegations on this point go far beyond that.  As discussed above, the Complaint alleges Mr. Garcia was arrested even though he did not interfere with police activity, engage in any conduct disrespectful to the police, or disturb any member of the public.  (Compl. ¶¶ 18-25.)  Moreover, an inference adverse to the Defendant Officers also can be drawn from the allegation that Mr. Garcia's memory card captured his pre-arrest interaction with the police, then was subsequently confiscated and "lost" while in police custody.

The fact that the State's Attorney assigned to Montgomery County "saw fit to prosecute" is not exactly the "independent third party" the Motion to Dismiss suggests, but in any event, that the prosecution proceeded does not mean probable cause existed as a matter of law.  Mot. 36.  As a threshold matter, prosecution is a necessary element of malicious prosecution – if the fact that prosecution occurred vitiated the probable cause element as a matter of law, such claims could never be brought.  In any event, it is "settled law that a civil defendant may not avoid liability for

malicious prosecution by relying on the independent judgment of a prosecutor or attorney unless that defendant has made a full disclosure of all material facts relative to the charges being made." *Brown v. Dart Drug Corp.*, 551 A.2d 132, 134 (Md. Ct. Spec. App. 1989). Here, Mr. Garcia alleges the Defendant Officers swore out a statement of charges that falsely stated he acted in a disorderly manner, despite the fact there was no probable cause to arrest him; that they conveniently "lost" Mr. Garcia's video card that contained exculpatory evidence of events leading to his arrest; and that they continued to aid the prosecution despite knowing the charges were baseless. That the Defendants make this specious argument only gives further credence to Mr. Garcia's allegation that this prosecution was an attempt to stave off a civil rights claim. (Compl. ¶ 36.)

The Complaint also alleges far more than "bald and conclusory allegations" of the malice required for malicious prosecution.[27] As with false arrest and imprisonment, the Complaint's allegations plainly suffice. They are found in its averments relating to:

- the beating Mr. Garcia suffered during the arrest leading to the prosecution (Compl. ¶¶ 20, 24-25);

- the implication that the prosecution and conviction were needed to justify the arrest (*id*. ¶¶ 36-37);

- the implication that the arrest was intended to interfere with Mr. Garcia's First Amendment rights (*id*. ¶¶ 18-28); and

- the seizure of Mr. Garcia's memory card, as well as the failure to return it, especially given that it would have contained evidence of the interaction between the officers and Mr. Garcia.

*Id*. ¶¶ 30, 35, 46, 54, 63, 84- 92-95. The Complaint also expressly alleges facts supporting malice in Count VII. *See, e.g.*, *id*. ¶ 108. And, were that not enough, the Complaint's allegations

---

[27] Mot. 36 (citing *Wells v. State*, 642 A.2d 879, 884 (Md. Ct. Spec. App. 1994) (quoting *Romanesk v. Rose*, 237 A.2d 12 (Md. 1968))). Moreover, the cases Defendants cite on this point regarding malice actually did not involve the malice standard, but rather gross negligence.

"that Officer [Malouf] beat Plaintiff … without provocation … *alone* could establish … malice." *Crouch*, 2012 WL 6019296, at *5 n.2 (emphasis added).    Moreover, the malice element of malicious prosecution may be inferred from lack of probable cause for Mr. Garcia's arrest and imprisonment, which is likewise set forth in the Complaint.    *See supra* 15-17, 26, 34.    In any event, where there are material questions of fact on probable cause, summary disposition of a plaintiff's malicious prosecution claim is improper.    *Crouch*, 2012 WL 6019296, at *5.    For all these reasons, Mr. Garcia's well-pleaded allegations of malice are sufficient to defeat dismissal of his malicious prosecution claim.[28]

## VIII.   CONSIDERATION OF WHETHER AND HOW TO BIFURCATE THIS CASE IS PREMATURE AND OUTSIDE THE SCOPE OF THIS MOTION

Defendants' request to bifurcate this case, as an alternative to the various arguments for dismissal, is premature at so early a stage of the proceedings.    Defendants claim Mr. Garcia must first show a violation by Officer Malouf (and/or the other Officers) before municipal liability and official capacity claims can proceed, and they express concern about potential jury prejudice at trial.    Mot. 6, 9-11, 14, 15, 37.    However, all such concerns are trial-related.    *See id.* 10-11.    This case has a long way to go before it is appropriate or necessary to consider whether and how a jury might be prejudiced.    Once discovery helps crystalize the issues, and potential liability of the various Defendants is further developed, there will be ample time to discuss bifurcation for concerns of potential jury prejudice.

---

[28]   Defendants err in relying on *Alvarez v. Montgomery County* for the proposition that, in that case, the "plaintiff could not survive *summary judgment* on malicious prosecution because he [] advanced no evidence that the officers were acting out of a wrongful or improper motive." Mot. 37 (citing 147 F.3d 354, 360 (4th Cir. 1990)) (emphasis added).    Defendants are of course welcome to make a similar argument after discovery at the summary judgment stage.    But for present purposes, Mr. Garcia has alleged all that *Twombly*, *Iqbal* and their progeny require.

Furthermore, Defendants' convoluted requests for bifurcation are misplaced on a motion to dismiss under Rule 12(b)(6).[29] Defendants have not made a motion to bifurcate pursuant to Rule 42(b), and cite to no cases to support their dubious position that bifurcation should be combined with a motion to dismiss.  Indeed, bifurcation is typically raised as a separately briefed motion, often after defendants have answered and/or motions to dismiss have been resolved. *See, e.g.*, *Marryshow v. Town of Bladensburg*, 139 F.R.D. 318 (D. Md. 1991); *Johnson v. Prince George's County*, No. DKC 10-0582, 2012 WL 6086875 (D. Md. Dec. 5, 2012).

There may come a time to consider bifurcation, but that is properly addressed on a fully briefed motion.  Moreover, any plan for bifurcation should address <u>only</u> the *Monell* claims against the County.  *See, e.g.*, *Stewart v. Prince George's County*, No. AW-01-302, 2001 WL 759890, at *3 (D. Md. May 23, 2001) (granting motion for bifurcation and stay of discovery only as to issues against County in *Monell* case); *Dawson v. Prince George's County*, 896 F.Supp. 537, 540 (D. Md. 1995) (same).  *See also supra* note 29.  Meanwhile, there is no subdividing discovery into (a) the roles that the various Defendants played from the first moment of interaction between Mr. Garcia and the Defendant Officers Malouf, Baxter and Graves, (b) the closure of the County's investigation exonerating them, and (c) the MCPD's relevant policies and procedures.  There accordingly is little to be gained in addressing bifurcation at this most initial stage of the case.

---

[29]  It is not even clear from Defendants' motion which claims, exactly, they are seeking to bifurcate.  At various points, Defendants request bifurcation of all "official capacity" and *Monell* claims, Mot. 11; bifurcation of personal *and* individual capacity claims against Lt. Sheelor, Mot. 15; and "all claims in the Amended Complain … as to all Defendants except for the claims against Officer Malouf in his individual capacity," Mot. 6 – including non-*Monell* claims against individual Officers other than Officer Malouf.  Defendants' entire theory of bifurcation, however, rests on the process for proving *Monell* liability.  *See* Mot. 9-11.  Should the Court consider bifurcation at any stage, the only claims potentially appropriate for such treatment would be the *Monell* claims against the County.

**CONCLUSION**

Derogation of the rights that Mr. Garcia's Complaint seeks to protect "erodes public confidence in our police departments, decreases the accountability of our governmental officers, and conflicts with the liberties that the Constitution was designed to uphold."  U.S. SOI at 2.  As DOJ also correctly notes, the Complaint's allegations deserve the "highest level of scrutiny," and Montgomery County's treatment of Mr. Garcia for exercising his First Amendment rights merits "considerable skepticism."  *Id*. at 4, 8.  For these and all the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss.

Dated:  March 5, 2013

Respectfully submitted,

/s/

Robert Corn-Revere (*pro hac vice*)
Ronald G. London (Md. Bar No. 16846)
Alison B. Schary (*admission pending*)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, N.W., Suite 800
Washington, DC  20006
Ph: 202-973-4200; Fax: 202-973-4499
bobcornrevere@dwt.com

*Counsel for Plaintiff Mannie Garcia*