# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MANNIE GARCIA, | ) |
| *Plaintiff*, | ) |
| v. | ) Civil No. JFM-12-3592 |
| MONTGOMERY COUNTY, MARYLAND, et al., | ) |
| *Defendants*. | ) |

## MEMORANDUM

Plaintiff Mannie Garcia brought this action against the following defendants: Montgomery County, Maryland; Chief of Police Thomas Manger; Montgomery County police officers Christopher Malouf, Kevin Baxter, and Michael Graves; and Lieutenant Mark Sheelor (collectively, the "defendants"). In his complaint, Mr. Garcia seeks relief for claims under 42 U.S.C. § 1983, the Privacy Protection Act of 1980, and several common law tort claims. Now pending before the court is defendants' amended motion to dismiss counts I through VII of plaintiff's complaint.[1] (ECF No. 11.) The issues have been fully briefed, and the court finds no hearing is necessary. *See* Local Rule 105.6. For the reasons stated below, defendants' motion to dismiss is granted in part and denied in part.

## BACKGROUND

The following facts are alleged by Mr. Garcia in his complaint. (*See* ECF No. 1.) On June 16, 2011, Mr. Garcia, his wife, and a family friend were leaving a restaurant in Wheaton, Maryland, when Mr. Garcia observed two young Hispanic men being arrested. (Compl. ¶ 16.)

---

[1] Defendants have not moved to dismiss Count VIII (Battery) against Officer Malouf.

The officers on the scene were defendants Malouf, Baxter, and Graves and two Montgomery County Alcohol and Tobacco Officers. (*Id.*) Concerned that the arresting officers were using excessive force, Mr. Garcia—an award-winning freelance photojournalist—began to record the incident photographically. (*Id.* ¶¶ 6, 17.) Mr. Garcia did not interfere with the police activity, initially recording the incident from at least thirty feet away. (*Id.* ¶ 18.) Officer Baxter subsequently flashed Mr. Garcia with a spotlight, and Mr. Garcia moved across the street to continue photographing the arrest from about one hundred feet away. (*Id.*)

After he moved across the street, Mr. Garcia was approached by Officer Malouf. (*Id.* ¶ 18, 19.) As Officer Malouf approached, Mr. Garcia identified himself as a member of the press and opened his hands to show that he had nothing in his possession except a camera. (*Id.* ¶ 19.) Officer Malouf shouted that Mr. Garcia was under arrest, placed him in a chokehold, and forcibly dragged him along the ground to the police cruiser. (*Id.* ¶¶ 20, 24.) Officer Malouf then placed Mr. Garcia in handcuffs and confiscated his camera. (*Id.* ¶ 23.) While handcuffed, Officer Malouf kicked Mr. Garcia's right foot out from under him, causing Mr. Garcia to hit his head on the police cruiser as he fell to the ground. (*Id.* ¶ 24.) Mr. Garcia's wife emerged from their car to see what was happening, and as she did so, Mr. Garcia heard an officer say, "If that fucking bitch takes one more step I am going to arrest her ass." (*Id.* ¶ 25.)

The officers at the scene did not inform Mr. Garcia of his charges, nor did they provide him with *Miranda* warnings. (*Id.* ¶ 28.) Instead, Mr. Garcia was placed in a police cruiser and driven by Officer Malouf to the Wheaton/Glenmont Police Station. (*Id.* ¶ 29.) While in the police cruiser, Mr. Garcia observed Officer Malouf remove the battery and video card from Mr. Garcia's camera and stash the video card in his shirt pocket. (*Id.* ¶ 30.) Mr. Garcia was subsequently taken to the Montgomery County Detention Center, Central Processing Unit, where

he was booked and charged with disorderly conduct in violation of Maryland Code, Criminal Law Article § 10-201. (*Id.* ¶¶ 31, 32.) Mr. Garcia alleges that Officer Malouf's report, which formed the basis for the disorderly conduct charge, was a fabrication. (*Id.* ¶ 34.) After being booked, Mr. Garcia was released on his personal recognizance, but his video card was never returned. (*Id.* ¶ 35.) On December 16, 2011, after a trial in the District Court of Maryland for Montgomery County, Mr. Garcia was acquitted of the disorderly conduct charge. (*Id.* ¶ 37.)

Mr. Garcia alleges that the defendants failed to follow the written Montgomery County Police Department ("MCPD") Policy on Police Media Relations, FC No. 1141, dated December 29, 2000, which provides, among other things, that the police should maintain a cooperative working relationship with members of the media. (*Id.* ¶¶ 38-39.) Because of this incident, the MCPD Internal Affairs Division conducted an investigation, which Mr. Garcia alleges was "perfunctory" and marred by conflict of interest. (*Id.* ¶¶ 40-42.) In particular, the principal investigator—defendant Lieutenant Sheelor—forgot to record his investigatory interviews with the officers and forgot to take any notes. (*Id.* ¶ 41.) Moreover, the internal investigation was conducted during Mr. Garcia's district court trial, and Lieutenant Sheelor conferred with and assisted the officers he was assigned to investigate. (*Id.* ¶ 42.) Despite Mr. Garcia's acquittal in the state district court, Internal Affairs determined that there were "no administrative violations" by the officers. (*Id.* ¶¶ 43-44.) Since Mr. Garcia's Internal Affairs investigation and the initial filing of this civil suit, Mr. Garcia has observed some of the arresting officers cruising around his neighborhood and parking in front of his residence. (*Id.* ¶45.)

Mr. Garcia brought this action under 42 U.S.C. § 1983, seeking relief for violations of his First and Fourth Amendment rights. In addition, Mr. Garcia has brought a Privacy Protection Act of 1980 claim and several common law tort claims.

# ANALYSIS

## I. Legal Standard

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, … on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). Thus, the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." *Id.* (internal quotation marks and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

## II. Claims for Deprivation of Civil Rights Under 42 U.S.C. § 1983

Section 1983 establishes liability for "every person" who, under the color of law, deprives an individual of any rights, privileges, or immunities secured by the Constitution. 42 U.S.C. § 1983. In their motion to dismiss, defendants assert various bases for dismissing Mr. Garcia's § 1983 claims. The arguments are addressed below.

### A. *Individual Capacity Claims*

Mr. Garcia claims civil rights violations under § 1983 in Counts I, II, and III against Officer Malouf, Officer Baxter, and Lieutenant Sheelor in their individual capacities. For an individual to be liable under § 1983, it must be "affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (citations omitted); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (noting that "to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right") (emphasis in original). Here, Mr. Garcia's complaint sufficiently alleges that Officer Malouf, Officer Baxter, and Lieutenant Sheelor were acting under the color of state law at all relevant times. The only question that remains is whether Mr. Garcia has alleged that each individual defendant personally deprived him of a constitutional right.

Mr. Garcia's complaint properly states a claim against Officers Malouf and Baxter[2] in their individual capacities as to Counts I and II. In support of the First Amendment claims, the complaint alleges that Mr. Garcia was peaceably photographing the officers in a public place, in a manner and at a distance that did not interfere with them. As he was photographing the police activity, Officer Baxter flashed Mr. Garcia with a spotlight, and Mr. Garcia moved across the

---

[2]  Officer Graves is sued in his official capacity only. As discussed below, the official capacity claims against Officer Graves will be dismissed.

street.  In addition, the complaint alleges that Mr. Garcia identified himself as a member of the press and that he was forced to stop photographing the officers when Officer Malouf arrested Mr. Garcia, placed him in a chokehold, and dragged him to the police cruiser.  Mr. Garcia claims that his arrest and seizure was without probable cause because he engaged in protected speech.  The complaint further alleges that the defendant officers and other members of the MCPD were seen cruising around Mr. Garcia's neighborhood after this incident.

As the First Circuit recently confirmed, "a citizen's right to film government officials, including law enforcement officers, in the discharge of their duties in a public space is a basic, vital, and well-established liberty safeguarded by the First Amendment." *Gilk v. Cunniffe*, 655 F.3d 75, 85 (1st Cir. 2011).  Moreover, "[g]athering information about government officials in a form that can readily be disseminated to others serves as a cardinal First Amendment interest in protecting 'the free discussion of governmental affairs.'" *Id.* at 82 (quoting *Mills v. Alabama*, 384 U.S. 214, 218 (1966)).  Although the bulk of the allegations identify Officer Malouf as the primary actor, Mr. Garcia has sufficiently alleged that both Officers Malouf and Baxter interfered with his ability to photograph an arrest taking place in public and that Mr. Garcia was physically seized in response to his decision to take photographs of police activity.  Therefore, Mr. Garcia has properly stated a claim against Officers Malouf and Baxter in their individual capacities in Counts I and II.

Mr. Garcia's complaint also states a claim against Officer Malouf in his individual capacity in Count III.  In support of the Fourth Amendment claim, the complaint alleges that, despite the absence of probable cause, Officer Malouf arrested Mr. Garcia, charged him with disorderly conduct, and seized his camera and memory card.  "Fourth Amendment seizures are 'reasonable' only if based on probable cause." *Dunaway v. New York*, 442 U.S. 200, 213 (1979).

Mr. Garcia has alleged that his arrest and the seizure of his property were not based on probable cause and were simply the result of a fabricated police report by Officer Malouf. Therefore, Mr. Garcia has properly stated a claim against Officer Malouf in his individual capacity as to Count III. As for Officer Baxter, however, the complaint does not sufficiently allege that he acted personally in Mr. Garcia's arrest or the seizure of his property. The allegations relating to Officer Baxter's presence at the scene are not enough to state a claim for a Fourth Amendment violation. Accordingly, Officer Baxter is dismissed from Count III.

Finally, the complaint fails to state a claim with respect to Lieutenant Sheelor in his individual capacity in Counts I, II, or III. Lieutenant Sheelor was not present when Mr. Garcia's First and Fourth Amendment rights were allegedly violated by the other officers. The only allegations of Lieutenant Sheelor's personal involvement relate to his allegedly incompetent internal affairs investigation. Although the facts surrounding Lieutenant Sheelor's internal affairs investigation might bear upon establishing a pattern and/or practice by Montgomery County of Chief Manger for the official capacity claims, the complaint has not stated a claim against Lieutenant Sheelor individually for First or Fourth Amendment violations in Counts I, II, or III.

### B. Official Capacity Claims

#### i. Montgomery County (**Monell** Claim)

Mr. Garcia claims civil rights violations under § 1983 in Count IV against Montgomery County. While a municipality is subject to suit under § 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), liability attaches "only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original). A municipality cannot be held liable for a § 1983 action under the theory of

*respondeat superior*. *Monell*, 436 U.S. at 694. Instead, liability under a *Monell* claim "arises only where the constitutionally offensive acts of city employees are taken in furtherance of some municipal 'policy or custom.'" *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984) (citing *Monell*, 436 U.S. at 694); *see also Harris*, 489 U.S. at 385 (explaining that a municipality cannot be held liable under § 1983 unless "there is a direct causal link between the municipal policy or custom, and the alleged constitutional deprivation"). There are multiple ways that a policy or custom may be found, such as "in edicts of the city's formal decisionmaking body or in 'persistent … practices of [municipal] officials' having the *de facto* force of law." *Milligan*, 743 F.2d at 229 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)). However, "a municipal policy or custom giving rise to § 1983 liability will not be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees." *Id.* at 230.

Looking to the complaint here, Mr. Garcia alleges that his injury resulted from "Montgomery County's policy or custom of indifference to misconduct by MCPD officers" and a "lack of training and supervision requiring the police to follow the law and established departmental policies." (Compl. ¶ 38.) Mr. Garcia further alleges that despite a written MCPD media relations policy, which provides that police should maintain a cooperative working relationship with members of the media and treat them as invited guests, there is a "custom and practice among MCPD officers of obstructing and/or preventing members of the media from filming police activity conducted in public." (*Id.* ¶ 51. *See also id.* ¶¶ 83-85.) Mr. Garcia claims that Montgomery County has a policy, custom, or practice of "failing to supervise and discipline officers who unlawfully obstruct and/or prevent members of the media and the public from recording police activity conducted in public view, despite its awareness that these violations

happen." (*Id.* ¶ 49.) Finally, Mr. Garcia alleges that Montgomery County's inadequate investigation of his incident effectively sanctioned and endorsed the treatment of Mr. Garcia. (*Id.* ¶¶ 51, 85).

Mr. Garcia has stated a valid *Monell* claim. Contrary to the defendants' assertion that Mr. Garcia's complaint mentions only his incident and that he has pled nothing more than an isolated constitutional deprivation, the complaint alleges that Montgomery County was aware of unconstitutional actions by MCPD officers directed towards members of the media but chose to ignore such behavior. The Fourth Circuit has made clear that a *Monell* plaintiff need not "plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom and causation." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 339-40 (4th Cir. 1994) (citations omitted). At this stage, it is enough that Mr. Garcia has alleged that Montgomery County was aware of ongoing constitutional violations by MCPD officers and that the county's failure to supervise and discipline its officers allowed a pattern and/or practice of unconstitutional actions to develop.[3] Under *Twombly* and *Iqbal*, the factual allegations in the complaint are sufficient to survive a motion to dismiss as they are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Jordan*, 15 F.3d at 338 (stating that "section 1983 claims are not subject to a 'heightened pleading standard' paralleling the rigors of proof demanded on the merits") (citing *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993)).

The viability of Mr. Garcia's *Monell* claim, however, depends upon whether at least one of the defendant Officers violated Mr. Garcia's First and/or Fourth Amendment rights (Counts I

---

[3]  Of course, Mr. Garcia eventually will have to demonstrate that despite the written MCPD media relations policy, Montgomery County had a custom and practice of ignoring violations of this policy by MCPD officers such that the county effectively sanctioned unconstitutional behavior by the MCPD. However, that is not a proper question for a motion to dismiss.

through III). Therefore, as a matter of efficient case management, discovery will be bifurcated and will proceed only as to that question. *See Marryshow v. Town of Bladensburg*, 139 F.R.D. 318, 319 (D. Md. 1991).

### *ii. Other Official Capacity Defendants*

Mr. Garcia claims civil rights violations under § 1983 in Counts I, II, and III against defendants Chief Manger, Officers Malouf, Baxter, and Graves, and Lieutenant Sheeler in their official capacities. "[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the [government] entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citation omitted). "It is *not* a suit against the official personally, for the real party in interest is the entity." *Id.* (emphasis in original). Parties can be held liable in their official capacities "only when an injury was inflicted by a government's lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *City of St. Louis v. Praprotnik*, 486 U.S. 112, 121-22 (1988) (citations and quotations omitted). "Whether a particular defendant has final policy making authority is a question of state law." *Id.* at 123 & 124 n.1 (citations omitted). The only inquiry that remains as to the other official capacity defendants is whether they are the proper parties to represent Montgomery County in this suit.

Beginning with Chief Manger, Mr. Garcia has alleged that he "is responsible, in whole and/or part, for creating, implementing, promulgating, and enforcing the policies, practices, and/or customs complained of, including but not limited to those that prevented Mr. Garcia from engaging in lawfully protected and peaceful journalistic activity." (Compl. ¶ 8.). At this stage, Mr. Garcia has sufficiently alleged that Chief Manger has policy making authority for Montgomery County. While this contention may ultimately prove incorrect, that is a question

for summary judgment. Therefore, defendants' motion to dismiss Chief Manger in his official capacity is denied as to Counts I, II, and III.[4]

As for Officers Malouf, Baxter, and Graves and Lieutenant Sheeler, Mr. Garcia has not alleged that they had any final policy making authority for Montgomery County. Because these defendants are not proper parties to represent Montgomery County in this case, the claims asserted against Officers Malouf, Baxter, and Graves and Lieutenant Sheeler in their official capacities will be dismissed. *See Lytle v. Gilmore*, 77 F. Supp. 2d 730, 741-42 (E.D. Va. 1999) (finding that a Lieutenant in the Norfolk Police Department was not an official policy maker for the City of Norfolk and dismissing official capacity suit against him).

### III. Privacy Protection Act Claim

Mr. Garcia also asserts a claim against all defendants under the Privacy Protection Act of 1980 ("PPA"), 42 U.S.C. § 2000aa. The PPA "'generally prohibits government officials from searching for and seizing documentary materials possessed by a person in connection with a purpose to disseminate information to the public.'" *Sennett v. United States*, 667 F.3d 531, 535 (4th Cir. 2012) (quoting *Citicasters v. McCaskill*, 89 F.3d 1350, 1353 (8th Cir. 1996)). The statute creates a civil cause of action for damages that result from a search or seizure in violation of the PPA. *See* 42 U.S.C. § 2000aa-6(a).

But the PPA expressly prescribes the defendants who are subject to civil suit, and the officers must be dismissed from Mr. Garcia's PPA claim because they cannot be personally liable for violations of the PPA. The PPA authorizes a civil cause of action

---

[4] Like discovery for the *Monell* claim in Count IV, discovery relating to the official capacity claims against Chief Manger will be bifurcated and will proceed in the first instance only as to whether the defendant officers violated Mr. Garcia's First and Fourth Amendment Rights.

> (1) against the United States, against a State which has waived its sovereign immunity under the Constitution to a claim for damages resulting from a violation of this chapter, or against any other governmental unit, all of which shall be liable for violations of this chapter by their officers or employees while acting within the scope or under color of their office or employment; and
>
> (2) against an officer or employee of a State who has violated this chapter while acting within the scope or under color of his office or employment, if such State has not waived its sovereign immunity as provided in paragraph (1).

§ 2000aa-6(a). The statutory text thus makes clear that the governmental entity rather than the offending officer ordinarily shall be held liable for violations of the PPA. *See Davis v. Gracey*, 111 F.3d 1472, 1482 (10th Cir. 1997). The statute permits suit against individual officers or employees only when the liable State has not waived its constitutional sovereign immunity. Montgomery County is not entitled to sovereign immunity under the Constitution, *see N. Ins. Co. of N.Y. v. Chatham Cnty.*, 547 U.S. 189, 193–94 (2006), and therefore is a "governmental unit" subject to suit under § 2000aa-6(a)(1). Accordingly, Mr. Garcia cannot seek to hold the individual officers liable for their alleged violations of the PPA.

The PPA claim against Montgomery County, on the other hand, will survive. Section 2000aa-6(a)(1) plainly holds governmental entities liable for acts of their officers and employees under color of office, and Mr. Garcia has adequately pled a violation of the PPA by MCPD officers. Montgomery County also cannot now invoke the "suspect exception" to the PPA, which permits police to search for and seize documentary materials otherwise protected by the PPA when the person possessing the materials is a criminal suspect rather than an innocent third party. *See* 42 U.S.C. § 2000aa(a)(1); *Sennett*, 776 F.3d at 535. The suspect exception applies only when there is "probable cause to believe that the person possessing such materials has committed or is committing the criminal offense to which the materials relate." § 2000aa(a)(1), (b)(1). There is no suggestion by Montgomery County that Mr. Garcia was "committing the

criminal offense to which the materials relate," as Mr. Garcia apparently was not associated with the arrestees whom he was videotaping. *Cf. Sennett*, 667 F.3d at 536 (applying suspect exception where officers had probable cause to believe photojournalist had conspired with or aided and abetted the vandals whom she was videotaping). In any event, the applicability of the suspect exception cannot be resolved on a motion to dismiss.

**IV. State-Law Claims**

The defendants have moved to dismiss Count VI (False Arrest/False Imprisonment) and Count VII (Malicious Prosecution). These claims fail as a matter of law against Montgomery County, and thus against the defendants sued in their official capacities, because a Maryland municipality is "generally immune from common law tort suits when engaged in governmental, as opposed to propriety, acts." *Williams v. Prince George's Cnty.*, 157 F. Supp. 2d 596, 603-04 (D. Md. 2001) (internal quotations and citations omitted); *see also Ihnken v. Gardner*, --- F. Supp. 2d ---, 2013 WL 772955, at *12 (D. Md. 2013) (describing governmental immunity for municipalities and official capacity defendants from common law tort claims). "The operation of a police force is a governmental function. Thus, [a municipality] is immune as to common law tort claims asserted against it based on torts committed by its police officers." *Williams*, 157 F. Supp. 2d at 604 (internal quotations and citations omitted). Therefore, Montgomery County, Chief Manger, and the other official capacity defendants are dismissed from Counts VI and VII.

As for Officer Baxter and Lieutenant Sheelor, who are sued in their individual capacities, the complaint fails to state a claim against them for either false arrest/false imprisonment or malicious prosecution. Beginning with false imprisonment, the complaint does not sufficiently allege that they were personally involved in Mr. Garcia's arrest. The allegations relating to Officer Baxter's presence at the scene are not enough to state a claim for this tort. Moreover, in

his opposition, Mr. Garcia acknowledges that Count VI of the complaint "did not intend to encompass Lieutenant Sheelor, who was not on the scene of the arrest." (Pl.'s Opp'n 34 n.24.) Therefore, Officer Baxter and Lieutenant Sheelor are dismissed from Count VI.

With regard to the malicious prosecution claim, the complaint does not allege that either Officer Baxter or Lieutenant Sheelor actually instituted a criminal proceeding against Mr. Garcia. *See Okwa v. Harper*, 757 A.2d 118, 130 (Md. 2000) (outlining the elements of malicious prosecution under Maryland law, which includes that "the defendant instituted a criminal proceeding against the plaintiff"). Rather, the complaint states that Officer Malouf was the one who "swore out a warrant" for Mr. Garcia's disorderly conduct charge in the state district court. (Compl. ¶ 108.) Even if Officer Baxter and Lieutenant Sheelor served as witnesses or otherwise cooperated with the prosecution, these allegations do not satisfy the first element of malicious prosecution under Maryland law. Accordingly, Officer Baxter and Lieutenant Sheelor are dismissed from Count VII.

As for Officer Malouf, who is sued in his individual capacity, the complaint states a claim against him for both false arrest/false imprisonment and malicious prosecution. He is alleged to have been the principal officer involved in Mr. Garcia's unconstitutional seizure and arrest. In addition, Officer Malouf was the officer who swore out the warrant that formed the basis for Mr. Garcia's disorderly conduct prosecution. At this stage, Mr. Garcia has alleged sufficient facts to permit the false arrest/false imprisonment and malicious prosecution to move forward against Officer Malouf in his individual capacity.

## CONCLUSION

For the foregoing reasons, defendants' amended motion to dismiss counts I through VII of plaintiff's complaint will be granted in part and denied in part. A separate Order follows.

August 23, 2013                    /s/
Date                               J. Frederick Motz
                                   United States District Judge